**M. O. MEDINA et al., Plaintiffs,**

v.

**ONE NYLON PURSE SEINE, Defendant.**

**No. 3628–SD.**

United States District Court
S. D. California.

Oct. 19, 1966.

Driscoll, Harmsen & Carpenter, San Diego, Cal., for plaintiffs.

## MEMORANDUM OF DECISION

JAMES M. CARTER, Chief Judge.

The Court finds that the Ecuador sighted the net adrift on June 1,' 1966; that there was danger to the propellers in approaching and retrieving the net; that seven hours work by the crew was involved and that it took ten days to bring the boat to port.

That there was approximately 397 tons of fish on board; that the net and rings weighed about 18 ton. That the salvage took place during the season of small hurricanes.

| That the value of hull and machinery of the Ecuador was | $400,000 |
| --- | --- |
| Its Net | 45,000 |
| Its skiff | 9,750 |
| Value of its fish | 123,382 |
| | $578,132 |

That storage charges have accrued at $50 per month for June, July, August, September and October. Insurance for 90 days was secured at the cost of $100.-00.

That the boat and crew worked on shares, with 43 shares to the crew and 57 shares to the owners.

That the value of the salvaged net is the sum of $15,C00 and that no one has made claim to the net.

That the salvage was a hazardous occupation, and that if a tuna boat is overloaded there is extreme danger of capsizing. That the salvaged net, together with the catch was one of the largest loads ever brought in by the Ecuador.

Gilmore and Black in Law on Admiralty on p. 465 states:

"The reverse of the moiety rule might be said to be in effect today: the award will never be for more than half the value of the property, so that the moiety has become a ceiling instead of a floor."

In Hollingsworth v. Seventy Doubloons, D.C.E.D.Pa.1820, Fed.Cas.No. 6,-620, the gold in question was found in the remnants of a chest which was recovered when floating on the ocean by the salvors. No mark of ownership was on the chest and no claimants intervened in the libel. The court awarded 50% of the amount of the value of the gold to the salvors, stating,

"The quantum of salvage is not fixed by any general rule, but depends on the circumstances of every case. I confess, the discretion I am often obliged to exercise, is sometimes embarassing; in this case it is not easy to determine what is exactly right. I find by some authorities produced, and in some of the old maritime laws, that half the amount of the derelict has been given in many instances; much depends on the gross amount, for where that is large, I always give the less proportion, and thus sufficiently reward salvors, without an undue sacrifice by the owners, and I have concluded to allow half in this case, as the whole is not of great amount, and the establishment of a legal claim but slightly probable."

And, in fashioning the decree, the court stated as follows:

"Let a decree, in the usual form, be drawn on these principles, The remaining half of the balance of the whole is to remain in this court, deposited in bank according to the practice of this court, and the late law in affirmance of it, for the period of one year and a day, subject to any legal claims of the owner or owners; and if no such claims be interposed, the moneys remaining in court are to be disposed of agreeably to its future order and decree."

In re Moneys in Registry of District Court, 170 F. 470 (E.D.Pa.1909), the United States claimed monies which were in the registry for more than ten years a portion of which was $455.00, the remainder of a salvage award for salvaging some bales of cotton at sea. The decree in that case provided that the funds "be and remain in the registry subject to the further order of the court."

The court held that the Government was not entitled to this money as against the claim of the salvors, stating:

"Unquestionabiy, as it seems to me, the weight of the American authorities supports the position that, unless the United States has somehow shown its intention to exercise whatever sovereign power it may possess over the proceeds of derelict property, the salvors are entitled to the whole of such proceeds against all the world except the original owners; and there is no serious contention on the part of the government that it has ever manifested any purpose to exercise such power. I may add, in reply to a faint suggestion in the brief, that the purpose was certainly not manifested by the remote implication of section 996."

The court, in its decision, quotes from the Commissioner's Report which states, with reference to the *Hollingsworth* case, supra, that after the expiration of a year and a day, the court decreed that the residue of the fund be paid to libelants and that it was so paid. The Commissioner's Report also cites the following authority for the distribution of funds in the registry:

"In Russell v. 40 Bales of Cotton, Fed. Cas. No. 12,154, Judge Locke held in 1872, in a very elaborate and careful opinion, that after the expiration of a suitable time, ordinarily a year and a day, the residue of any fund remaining after the payment of costs and proper salvage, would usually be paid to the salvors, upon the ground that the lapse of time was sufficient to raise a presumption of abandonment by the owners, and that such delivery should be absolute unless the court should think it probable that some claim would be made thereafter, in which case a refunding bond might be required from the salvors.

"The opinion reviews many decisions and textwriters.

"The decision was affirmed by the Circuit Court in a per curiam opinion.

"This is the view of the law taken by Mr. Parsons in his work on Maritime Law, vol. 2, p. 617, towit, that the balance should be held for a year and a day, and if no owners then appeared, it should be paid to the finder.

"And by Judge Marvin, Wreck and Salvage, p. 143.

"If a year and a day was considered a sufficient time to bar owners years ago, when the means of communication and information were not as perfect as they are today, surely the 28 years which had elapsed in the present cause ought to be sufficient presumption against them."

Accordingly, there will be awarded to the crew and owners of the vessel, according to their shares, the sum of $7,500 from the proceeds of the sale. The balance of the proceeds of the sale, after deducting storage, insurance and other proper charges, shall be deposited in the Registry of the court pending further order of this Court; if no claims are filed, then upon the expiration of one year and one day, the balance in the Registry shall be paid to the crew and the owners according to their shares, as additional compensation for salvage.