## THE " SABINE."

*Salvors can not in the same libel proceed in rem against a vessel and in personam against the consignees of her cargo.*

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. R. H. Browne* and *Mr. C. B. Singleton* for the appellants. *Mr. John A. Campbell, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Salvage is the compensation allowed to persons by whose voluntary assistance a ship at sea or her cargo or both have been saved in whole or in part from impending sea peril, or in recovering such property from actual peril or loss, as in cases of shipwreck, derelict, or recapture.

Three elements are necessary to a valid salvage claim : 1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success.

Proof of success, to some extent, is as essential as proof of service, for if the property is not saved, or if it perishes, or, in case of capture, if it is not retaken, no compensation will be allowed. Compensation as salvage is not viewed by the admiralty courts merely as pay on the principle of *quantum meruit* or as a remuneration *pro opere et labore,* but as a reward given for perilous services voluntarily rendered, and as an inducement to mariners to embark in such dangerous enterprises to save life and property.

Sufficient appears to show that important assistance was rendered by the steamer " Mayflower " and her crew to the steamer " Sabine," in the nature of salvage service, as alleged in the libel. Both steamers were at the time in the Ouachita River, and each was bound on a trip to the port of New Orleans. When the " Mayflower " approached the landing described in the libel, those in charge of her deck discovered that the steamer

" Sabine " was in distress, and it appears that those in command of the latter steamer hailed the " Mayflower " and requested assistance. It also appears from the pleadings that the injured steamer had a cargo of six hundred and nineteen bales of cotton, consigned to various merchants at the port of destination, together with a number of passengers; that she and her cargo were in peril, owing to the fact that in attempting to back out from the landing she struck a snag or other obstruction beneath the surface of the river and became fast. Many of her flooring timbers and bottom planks were broken, and it is alleged that she had in her hold sixteen to eighteen inches of water, which was rapidly gaining on her pumps.

Success attended the efforts of the salvors, both as to the steamer and her cargo, and they delivered all the cotton to the consignees. Before the cargo was delivered to the consignees they executed to the master of the " Sabine " an average bond, agreeing to pay their respective proportions of whatever sums should be found due as expenses, charges, and sacrifices in consequence of the said disaster.

Efforts to settle the matter amicably having failed, the owner, master, and crew of the " Mayflower " filed a libel in the district court against the steamer " Sabine " and her cargo and the several consignees to whom the cargo was delivered. Process issued, and the return of the marshal shows that he seized the injured steamer. Service was also made upon the several consignees, but it is not shown that the cargo saved or any part of it was ever seized.

Due appearance was entered by the respective consignees, and they filed certain exceptions to the libel. Those still relied on are as follows: 1. That there was no seizure of the cargo and that a libel *in rem* cannot be maintained without a seizure. 2. That the consignees are not proceeded against as owners or possessors of the cargo. 3. That a suit *in personam* and a suit *in rem* cannot be maintained in such a case. 4. That a suit *in personam* for salvage services must be against those for whom the services were performed. 5. That the respondents are consignees, and that the cargo had been disposed of and accounted for to those who owned the cotton.

Hearing was had, and the district court sustained the excep-

tions and dismissed the libel as to the excepting parties. Dissatisfied with the decree of the district court the libellants appealed to the circuit court, where they were again heard, and the circuit court affirmed the decree of the district court. Still not satisfied the libellants have appealed to this court, and now assign for error that the circuit court erred in holding that the nineteenth admiralty rule applies to the case, because, as they insist, that the libel in this case is not a suit *in rem* and *in personam* within the meaning of that rule, and that the exception should have been dismissed.

Suits for salvage may be *in rem* against the property saved or the proceeds thereof, or *in personam* against the party at whose request and for whose benefit the salvage service was performed. Power is vested in the Supreme Court to regulate the practice to be used in suits in equity or admiralty by the circuit or district courts as conferred by an act of Congress, which has been in force for many years. 5 Stat. 518; Rev. Stat., sect. 917.

Pursuant to that authority the Supreme Court prescribed the preceding rule, which correctly describes the several modes in which salvors may seek compensation for unrequited salvage services. Salvors, under the maritime law, have a lien upon the property saved, which enables them to maintain a suit *in rem* against the ship or cargo, or both where both are saved in whole or in part. Such a remedy is the one usually pursued, and in view of the fact that the lien is maritime and exists quite independently of possession, it ordinarily affords the best mode of securing the payment of their salvage claims. Williams & Bruce Prac., 147. *The Elizabeth and Jane*, 1 Ware, 35; *The Bee*, id. 332, 344. Suits of the kind may be enforced against the proceeds of the property, where it appears that the property saved had been previously seized under admiralty process and sold, and the proceeds paid into the registry of the court. Examples of the kind may be given, as where the property saved consisting of the ship and cargo, and the same were subsequently seized for a violation of the revenue laws, and sold as perishable property before the libel for salvage was instituted, or where there were more than one set of salvors, and the first set caused the property to be seized and sold under

an order of court before the second obtained process of attachment. Cases of the kind not infrequently arise, and in all such the proceeds in the registry of the court represent the property saved, and it is clear that the suit may be against the proceeds, as provided in the nineteenth rule. *The Blackwall*, 10 Wall. 1, 12; *The Ship Ewbank*, 1 Sumn. 400.

Services of the kind are often rendered by more than one set of salvors, and where that is so, the second, if they do not join with the first set, may, as before remarked, proceed against the proceeds, or they may, pending the proceeding in the suit, apply to the court by petition to be admitted as parties to the original libel. *Adams* v. *Bark Island City and Cargo*, 1 Cliff. 210; *Norris* v. *Bark Island City and Cargo*, 1 id. 219.

Compensation in such a case is usually enforced by a libel *in rem*, but where the parties rendering the salvage service are employed and sent out by the owners or insurers, the persons employed may proceed *in personam* against their employers for compensation, even though they were unsuccessful, unless they contracted that their right to compensation should depend upon their success, as in the ordinary case of salvage service, without being antecedently employed.

Employers, in such a case, are liable to those rendering service, under such circumstances, in a suit *in personam*, within the last clause of the admiralty rule, but there is no authority for holding that salvors may proceed against the ship and cargo *in rem* and *in personam* against the consignees of the cargo in the same libel.

. Libellants in a suit for collision may proceed against the ship and master or against the ship alone, or *in personam* against the master or the owner alone, but the terms of the nineteenth rule are different, limiting the right of the salvor to a suit *in rem* against the property saved or the proceeds thereof, or *in personam* against the party at whose request and for whose benefit the salvage service was performed.

Important service, it may be assumed, was rendered by the libellants, but they were neither employed nor sent out by the consignees, nor did the consignees request them to go to the assistance or relief of the ship or cargo.

Concede that the request of the master for assistance would

be sufficient to enable the salvors to maintain an action *in* *personam* against the owners of the property, still the concession will not benefit the libellants in this case, as the libel is against the ship and cargo and the consignees to whom the cargo was delivered ;. nor would they be in any better condition even if they had joined the owners instead of the consignees, as the difficulty would still remain· that the proceeding is *in rem* against the ship and cargo and *in personam* against the owners of the cargo, without joining the owners of the ship.

Persons to whom goods are consigned may be the owners of the goods, or the goods may be the property of the consignors, or they may even belong to a third party, the fact being that the consignees are named in the bill of lading merely as agents of the shipper to deliver the goods in pursuance of some letter of advice.   Nothing appears in this case to explain the transaction, except that it is alleged in the libel that the different parcels of the cargo when rescued were delivered to the several respondents therein described as consignees.

Authorities may doubtless be found to support the proposition that the salvors may proceed *in rem* against the ship .and cargo or *in personam* against the owners of the property saved from the impending peril, but there is no well-considered authority which gives any countenance to the theory that the two modes of proceeding may be joined in the same libel.  *The Schooner Boston*, 1 Sumn. 328, 341; *The Hope*, 3 C. Rob. 215.

Actions *in rem* are prosecuted to enforce a right to things arrested to perfect a maritime privilege or lien attaching to a vessel or cargo or both, and in which the thing to be made, responsible is proceeded against as the real party, but actions *in personam* are those in which an individual is charged personally in respect to some matter of admiralty and maritime jurisdiction.   Both the process and proceedings are different,· and the appropriate decree in the one might be absolutely· absurd in the other.

Our admiralty rules were promulgated in accordance with the act of Congress, and, as Mr. Parsons says, they have all the effect of law, from which he draws the conclusion that no suit in such a case will lie against an owner *in personam* jointly with a suit *in rem* against the vessel.   2 Parsons' Admr. 378; *Dean*

v. *Bates*, 2 Woodb. & M. 87, 92; *The Atlantic and The Ogdens-burgh*, 1 Newb. Adm. 139.

Beyond all doubt the views of Mr. Parsons are sustained by the true construction of the nineteenth admiralty rule, which is expressed throughout in the disjunctive form, and plainly requires the action, if against the property saved or the proceeds thereof, to be *in rem*, the alternative clause clearly referring to a case where the property saved has been sold and the proceeds of the sale have been deposited in the registry of the court. Plain as that part of the rule is, further discussion of it is not necessary, as the libellants scarcely attempt in that regard to controvert the theory of the respondents.

Suppose the respondents are correct in that respect, still the libellants insist that the form of the libel may be supported under the last clause of the rule, which gives the right to an action *in personam* against the party at whose request and for whose benefit the salvage service was performed, and their argument is that the service in the case resulted in a benefit to the owners of the cargo; but the case fails to show that the owners of the cargo ever requested the service, and it is clear that they are not joined in the libel. They, the libellants, must show the request and the benefit, and unless they show that both concur they cannot make out a case even within their own theory, to which it may be added that the libel is against the consignees and not against the owner, unless it can be assumed that the consignees are the owners of the cargo, which certainly is not authorized by any thing that appears in the transcript.

But there is not a circumstance in the case tending to show that any such request was made, either by the consignees of the cargo or the owners of the same, nor can it for a moment be admitted that such an action can be maintained either against the consignees or the owners merely because the saving of the cargo resulted to their benefit. Volunteer assistance rendered to such property when in peril, and which is successful in saving the property or some portion of it, constitutes the proper foundation to support an action for salvage *in rem* against the ship and cargo or the proceeds thereof.

Reported cases may be found where the owners or insurers of

such property, being informed that the property was in peril, sent out vessels and mariners for its assistance and relief, and in such a case it is undoubtedly true that the persons employed, both for their own services and for the use of the vessel or other appliances, may maintain a libel *in personam* to enforce the payment of just compensation for all such services.

There is a broad distinction, said Dr. Lushington, between salvors who volunteer to go out and salvors who are employed by a ship in distress. Salvors who volunteer go out at their own risk for the chance of earning reward, and if not successful they are entitled to nothing, the rule being that it is success that gives them a title to salvage remuneration. But if men are engaged to go out to the assistance of a ship in distress they are to be paid according to their efforts, even though the labor and service may not prove beneficial to the vessel or cargo. *The Undaunted*, 1 Lush. 90.

No one can doubt that for such service the proper remedy is an action *in personam*, as provided in the last clause of the admiralty rule prescribing the mode of procedure to recover salvage compensation. Unless the property saved is destroyed after having been restored or is clandestinely removed from the jurisdiction, the salvors require no more convenient or effectual remedy than the action *in rem* against the property, as their compensation cannot exceed its value, and if destroyed without their fault or removed from the jurisdiction to defeat their remedy, no doubt is entertained that they may proceed *in personam* against the owners of the salved property, though the case is not specifically provided for in the nineteenth rule, to which reference has been made. *The Emblem*, 2 Ware, 61 ; *The Schooner Boston, supra;* Dunlap, Prac. 511 ; *The Trelawney*, 3 C. Rob. 216, note.

Mere employment to render such a service is no bar to such a libel, the rule being that nothing short of a contract to pay a given sum for the services to be rendered, or a binding engagement to pay at all events, whether successful or unsuccessful in the enterprise, will defeat the jurisdiction of the admiralty court. *The Camanche*, 8 Wall. 448, 477.

Compensation for such services, if voluntarily rendered, cannot exceed the value of the property saved, and for that the

salvors have a maritime lien on the property independent of possession, and which continues until the compensation is paid, so long as the property remains in specie. Maclachlan, Ship. (2d ed.) 593; *The Gustaf*, 1 Lush. 506; Maude & Pollock, Ship. (3d ed.) 487.

Viewed in the light of these suggestions it is clear to a demonstration that the decision of the Circuit Court is correct. *Nott* v. *Sabine & Cargo et al.*, 2 Woods, 211.

*Decree affirmed.*