**FORT MYERS SHELL AND DREDGING CO., Inc., Appellant,**

v.

**The BARGE NBC 512 and the BARGE NBC 540, et al., Appellees.**

**No. 25785.**

United States Court of Appeals
Fifth Circuit.

Nov. 27, 1968.

Brooks P. Hoyt, Tampa, Fla., William L. Stewart, Fort Myers, Fla., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellant.

O. K. Reaves, Owen Rice, Jr., James O. Davis, Jr., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for appellees.

Before WISDOM, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from a final judgment dismissing with prejudice the libelant's claim for salvage, which was entered at the conclusion of the libelant's case upon the respondents' motion for a "directed verdict."

The facts before the trial court, by stipulation and oral testimony, give the following picture. In early March of 1965, Edmonson Towing Company telephoned the libelant Fort Myers Shell asking that Fort Myers send a tug to meet Edmonson's Tug Nellie in the Gulf of Mexico outside Fort Myers, Florida and there take over the tow of two steel barges belonging to the respondents. Edmonson and Fort Myers agreed that Fort Myers would pick up the barges from the Nellie on Saturday morning, March 6, at the sea buoy off Sanibel Island and would then tow the barges up the Caloosahatchie River into port, delivering them to the respondents' Tug Leon Roddy. A price of $1000 was set for the proposed towing job.

The Nellie arrived off Sanibel Island in the late afternoon of Friday, March 5. Fort Myers was notified of the Nellie's arrival but declined to send its tug to meet the Nellie at that time, claiming that the weather was too rough and that nightfall was approaching. During the night the Nellie's hawser parted and she lost her tow. The two barges were washed ashore on Fort Myers Beach, and the Nellie ran aground farther up the coast.

Later Friday night the Coast Guard located the two barges, secured them by lines to palm trees on high ground, and notified Fort Myers. Fort Myers put watchmen on the barges and telephoned Edmonson and Edmonson's towing bro-ker, either or both of whom requested that Fort Myers do what it could to free the barges and turn them over to the Tug Leon Roddy. According to the testimony of two officers of Fort Myers, further conversations were had with Edmonson, the respondent Oliver, and the United States Salvage Association, each of whom said that he would see that Fort Myers would be compensated, but none of whom made an explicit offer to pay.

On Saturday morning Fort Myers' tug, Belle of Myers, proceeded down the Caloosahatchie River and, after pulling the Tug Nellie off the flats, located the two barges. The barges were positioned in tandem above the normal high water mark, parallel to the shoreline, near the remaining pilings of an old dock. For the remainder of Saturday the Belle of Myers tried unsuccessfully to float the barges. On the following day she was joined by another of Fort Myers' tugs and by the Leon Roddy, and after considerable effort the three succeeded in refloating both stranded vessels. The Leon Roddy towed one barge into port. Fort Myers, claiming to have received no clear promises of payment from any of the other parties, retained the other barge to secure payment of its fees. It later sent a bill for its services in the amount of $3,514.42 to the respondent with copies to Edmonson and the Salvage Association.

In due course libels for salvage services were brought against the barges and their owners. The District Court found that on the basis of the stipulated facts and the testimony of libelant's witnesses the barges were not in "imminent" danger and, therefore, as a matter of law they were not subject to a peril of the sea.[1] It also held that Fort Myers' services in unbeaching the barges constituted a continuation of its towage contract to

1. As the Supreme Court long ago stated in The Sabine, 101 U.S. 384, 25 L.Ed. 982 (1880) :

Three elements are necessary to a valid salvage claim: (1) A marine peril. (2) Service voluntarily rendered when not required as an existing duty or from a special contract. (3) Success in whole or in part, or that the service rendered contributed to such success. The trial court in the present case determined that the first two elements were absent.

deliver the barges to the respondent, rather than a voluntary act of salvage. Finally, the court held that Fort Myers' conduct was so inequitable as to bar it from relief.

▮ The standard of "imminent" danger employed by the trial judge is not the test of marine peril. As this court stated in The Leonie O. Louise, 4 F.2d 699, 700 (1925), the standard is not whether the peril is imminent, but rather whether it is "reasonably to be apprehended." As was said in *The Freedom:*

> It is not necessary that there be danger immediately impending, but if the vessel is stranded so that it is subject to the potential danger of damage or destruction she may well be a subject of salvage services.[2]

On the record before us we cannot say that as a matter of law peril was not reasonably to be apprehended. The barges were stranded. There were pilings nearby. The sudden storms that arise in the Gulf of Mexico at all times of the year have frequently accounted for cases before the admiralty courts. See, e. g., Caillouet v. The Jackie G., 196 F.Supp. 951, 953 (E.D.La.1961).[3] The issue of the scope of the peril should be the subject of a full factual inquiry with the proper standard of law applied thereto.

▮ The District Court's determination that Fort Myers was contractually obligated to unbeach the barges lacks adequate support in the record.[4] By agreeing to a modification and continuation of the prior towing contract whereby it would be obligated to refloat the barges on the beach rather than pick them up at the sea buoy, Fort Myers would have undertaken a time-consuming and extensive unbeaching operation for the same fee that had been set for a relatively simple towing job. We are unable to find sufficient evidence to indicate that such an agreement was made. The fact that a shipowner requests a salvage service and that the salvors in response furnish it, standing alone, does not create an implied contract so as to defeat a salvage claim. See Atlantic Towing Co. v. The Caliche, 47 F.Supp. 610, 614 (S.D.Ga.1942).[5]

▮ The District Court also concluded that Fort Myers "forced its services upon the barges" and that it would be grossly inequitable under the circumstances of this case to require the respondents to pay. Here too, the facts in the limited record before us are not sufficient to support the court's conclusion.

The judgment of the court below is reversed and the case remanded for a new trial.

2. 1932 A.M.C. 933, 935 (W.D.N.Y.). See also Mississippi Valley Barge Line Co. v. Indian Towing Co., 232 F.2d 750, 753 n. 4 (5th Cir. 1956); La Rue v. United Fruit Co., 181 F.2d 895, 898–899 (4th Cir. 1950); McConnochie v. Kerr, 9 F. 50, 53 (S.D.N.Y.1881); The Saragossa, Fed.Cas.No.12,334, 1 Ben. 551, 553 (1867).

3. While there is a dispute over the severity of the weather conditions in the present case, the libelant's evidence suggests that the weather was severe enough Friday to cause the Nellie to lose her tow, yet "calm as a mill pond" on Saturday.

4. The District Court also concluded that the operators of the Nellie were negligent in failing to provide adequate safeguards to hold the barges in tow. Thus, any claim for salvage by Edmonson would be barred. The Clarita and The Clara, 90 U.S. (23 Wall.) 1, 23 L.Ed. 146 (1875); Hendry Corp. v. Aircraft Rescue Vessels

C–77436 and C–77439, 1953 A.M.C. 2115, 113 F.Supp. 198 (E.D.La.); 1 Benedict, Admiralty § 123, at 343 (Knauth ed. 1940). However, no evidence justifies the court's holding that Fort Myers was similarly denied salvage recovery. At the time the hawser parted, the barges were not in Fort Myers' possession, and they were washed ashore long before they were to be delivered to Fort Myers. No contention has been raised that Fort Myers was obligated to pick up the barges on Friday night, rather than on Saturday morning as had been agreed.

5. Because both parties rested on other contentions, we do not reach the issue of whether they might have entered into a salvage contract rather than a continuation of their prior towage contract. See The Comanche, 75 U.S. (8 Wall.) 448, 477, 19 L.Ed. 397, 405 (1869).