E.L. McNABB, Sr., and E.L. McNabb, Jr., Plaintiffs,

v.

O.S. BOWFIN, Official No. 604231, its engines, tackle, etc. and its cargo of frozen seafood products, In Rem, and Western Pioneer, Inc., Alaska-Shell, Inc., Clipperton, Inc., Yukon Bleu, Inc., Pan-Alaska Fisheries, Inc., and Pacific Pearl Seafoods, Inc., In Personam, Defendants.

No. C80–699B.

United States District Court, W.D. Washington.

April 28, 1983.

Charles M. Davis of Harrison, Davis & Calmes, Seattle, Wash., for plaintiffs.

Michael H. Williamson of Madden, Poliak, MacDougall & Williamson, Seattle, Wash., for defendants.

## MEMORANDUM OF DECISION

BEEKS, Senior District Judge.

At approximately 0350 hours on June 7, 1980, defendant vessel (BOWFIN) ran aground at full speed, 10½ knots, on a rocky, sloping beach at the western entrance to Akutan Harbor, Akutan Island, Alaska. After an inspection, the master determined that the vessel was hard aground, but was not taking on water and was not substantially damaged. An at-

tempt to back BOWFIN off the strand with her own engines was unsuccessful.

BOWFIN is a reefer of steel construction, 174 feet in length, valued at $1,751,926. At the time of grounding, BOWFIN was laden with a cargo of crab and salmon valued at $727,717 with unearned freight of $43,973 at risk by claimant Western Pioneer, Inc.

O/S MICHAEL LEE is a twin-screw trawler of steel construction, 94 feet in length, valued at $1,300,000. Captain Gregory N. Larson, master of BOWFIN, requested assistance from MICHAEL LEE in freeing BOWFIN. After a series of discussions between Larson and Cory Kaldestad, master of MICHAEL LEE, it was decided to coordinate the freeing attempt with the incoming tide which was scheduled to reach its high at approximately 0100 hours, June 8th. At approximately 1900 hours on June 7th, towing wires were run from MICHAEL LEE to BOWFIN'S stern. At approximately 2330 hours, with engines of both vessels engaged, BOWFIN came free from the strand.

Plaintiffs brought this action for salvage. Defendants contend that the efforts of MICHAEL LEE did not amount to salvage because BOWFIN was not imperiled and MICHAEL LEE did not succeed in freeing BOWFIN. They contend the high tide freed her from the strand and that MICHAEL LEE merely maintained a strain on the towing wires to hold position. Trial on all issues was held on April 12, 1983.

There are three elements necessary to a salvage claim: (a) a maritime peril to the property salved; (b) service voluntarily rendered (which is not in issue); (c) success in whole or in part, or a contribution to that success. *The Clarita*, 90 U.S. (23 Wall.) 1, 23 L.Ed. 146 (1874).

To constitute a maritime peril, it is not necessary that the danger be actual or imminent; it is sufficient if, at the time assistance was rendered, the vessel was stranded so that it was subject to the potential danger of damage or destruction. *Mississippi Valley Barge Line Co. v. Indian Towing Co.*, 232 F.2d 750, 753 n. 4 (5th Cir.1956); *Fort Myers Shell & Dredging Co. v. Barge NBC 512*, 404 F.2d 137, 139 (5th Cir.1968); *see Smith v. Union Oil Co. of California*, 274 F.Supp. 248 (W.D.Wash. 1966). A vessel driven aground on a rocky beach in the area involved must be considered as in a state of peril. Exposed as she is to wind, weather, and waves, it does not require extensive reflection to realize that so long as she remains in such a hapless position, further damage and eventual breaking up may ensue. This is especially so in the Aleutian Islands where unpredictable and potentially violent weather conditions at all times of the year are frequently responsible for various misfortunes to vessels and crew.[1] Accordingly, the court finds BOWFIN faced a maritime peril.

The third element necessary to a valid salvage claim is that the salvage operation end in success, in whole or in part, or that the service rendered contribute to ultimate success. *The Sabine*, 101 U.S. 384, 25 L.Ed. 982 (1879); *Legnos v. M/V Olga Jacob*, 498 F.2d 666, 672 (5th Cir.1974). Defendant contends that MICHAEL LEE did not contribute to freeing BOWFIN, but rather the incoming tide and BOWFIN'S own power were solely responsible for freeing her from the strand. Larson admits, however, that he requested assistance from MICHAEL LEE (deposition of G.N. Larson, pp. 10, 14) and that towing wires were run from BOWFIN'S stern to MICHAEL LEE (deposition of G.N. Larson, p. 17). The plan to free BOWFIN, orchestrated by Kaldes-

---

1. "The weather in the Aleutians is characterized by persistently overcast skies, high winds, and violent storms. No other area in the world is recognized as having worse weather in general than that which the Aleutian Islands experience." 9 United States Coast Pilot 165 (7th ed. 1964). Williwahs frequently occur in the Aleutian Islands and are known to be sudden, violent, and unpredictable. The local topography will determine the direction from which williwahs will blow and the probability of such a wind at a particular station is governed by the pressure pattern at the time. *Id.* at 19. The court takes judicial notice of the United States Coast Pilot as it has done in the past. *See In re New England Fish Co.*, 465 F.Supp. 1003, 1007 n. 4 (W.D.Wash.1979).

tad, called for joint simultaneous use of the engines of both vessels (deposition of G.N. Larson, pp. 17–18). The evidence establishes that MICHAEL LEE pulled for five to ten minutes before BOWFIN was freed. Accordingly, the court finds that the acts of MICHAEL LEE bore directly on the successful effort to free BOWFIN.

After considering all evidence presented, the court holds that plaintiffs performed a low grade salvage service on high value property for which they are entitled to an award. The parties have agreed that the maximum amount of salvage award shall not exceed $38,602.47, of which plaintiffs have been paid $33,376.76, leaving a possible maximum recovery of $5,525.71. No exact mathematical formula exists by which the worth of salvage service can be determined, but the court feels that the maximum recovery set by agreement is reasonable and adequate. Accordingly, plaintiffs are entitled to receive the balance of $5,525.71.

This Memorandum of Decision shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.