**FALGOUT BROTHERS, INC.. Plaintiff,**

v.

**S/V PANGAEA, in rem, Defendant.**

**Civil Action No. 96–0805–RV–C.**

United States District Court,
S.D. Alabama,
Southern Division.

May 6, 1997.

William W. Moore, Mobile, AL, James O.M. Womack, New Orleans, LA, for Plaintiff.

David J. Bederman, Professor University of Virginia School of Law, Charlottesville, VA, for Defendant.

## ORDER

VOLLMER, District Judge.

Presently before the court is plaintiff's complaint for a salvor's award (Doc. 1) and motion for entry of default judgment (Doc. 13). The crew of one of plaintiff's tug boats, while towing a barge from Puerto Rico to the port of Mobile, discovered a derelict sailboat in the open waters between Florida and Cuba. The sailboat, S/V Pangaea, was brought to the port of Mobile. To collect on its maritime lien arising out of this salvage of S/V Pangaea, plaintiff instituted the present action and had this court place the vessel under *in rem* arrest. On August 27, 1996, the court ordered that notice of the vessel's arrest and the present civil action be published three times a week for two consecutive weeks in *The Mobile Register*. *See* Order of Publication (Doc. 8). In said Order, the court directed that any person having an interest in S/V Pangaea file a notice of claim by September 23, 1996. To this day, no person or entity has filed a claim against the vessel.

On October 11, 1996, plaintiff filed a motion for entry of default judgment (Doc. 13). Therein, plaintiff requests that the court enter a default judgment in favor of plaintiff, declare plaintiff's salvage lien to be a priority lien, and instruct the United States Marshal to execute and deliver a Marshal's bill of sale transferring the vessel to the plaintiff free and clear of all other liens or claims in satisfaction of its maritime lien. Plaintiff requests that its receipt of the bill of sale be conditioned upon its payment of all costs incurred by the Marshal and the substitute

custodian fees.[1] In short, plaintiff seeks an award of outright title to the vessel. Though never expressly stating so in its filings With the court, plaintiff relies on the law of finds, and not the law of salvage, in support of its claim.

After examining the law of salvage and finds, the court declined to grant the motion. Instead, plaintiff was ordered to file an expert affidavit as to the value of the vessel and the value of plaintiff's salvage efforts and to submit a brief addressing the issue of the right of crew members to share in any salvage award the court might make. Plaintiff was also advised "to consider whether an award of all or part of the proceeds from sale of the S/V Pangaea (made available pursuant to enforcement of the salvage lien) would be more appropriate than an award of outright title given the particular facts in this case." Order of November 6, 1996 (Doc. 16).

■■■ The court has determined that plaintiff's motion for entry of default judgment (Doc. 13) is now due to be granted. However, the court will not award the relief requested, namely the investiture of title to Falgout Brothers, Inc. As indicated in previous orders, the court holds that the law of salvage, not the law of finds, must be applied in this case. Application of the law of finds, which vests title in the subject *res* to the finder, is reserved for those rare cases where the owner is deemed to have abandoned his claim of title to the *res*. *See* Thomas J. Schoenbaum, *Admiralty & Maritime Law* 798 (1987). Proving abandonment is a difficult task. A finder must show that the owner voluntarily intended to divest himself of title. *The No. 105/Belcher Oil Co. v. Griffin,* 97 F.2d 425, 426 (5th Cir.1938). Or, in the case of articles recovered from ancient shipwrecks on the sea floor where no owner appears in court to claim them, abandonment may be inferred from those circumstances. *Columbus–America Discovery Group v. Atlantic Mutual Ins. Co.,* 974 F.2d 450, 461(4th Cir.1992), *cert. denied,* 507 U.S. 1000, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993). Abandonment must be proven by clear and convincing evidence, such as the owner's express declaration abandoning title. *Id.,* The application of the law of salvage is favored over application of the law of finds. *Id.* at 460–61. *See generally Hener v. United States,* 525 F.Supp. 350, 355–57 (S.D.N.Y.1981).

■■■ Falgout Brothers, Inc. has not demonstrated that the owner of S/V Pangaea voluntarily and intentionally abandoned title. Absent such evidence, the court is obliged to apply the law of salvage. Without a doubt, Falgout has satisfied the elements of a valid salvage claim.[2] However, traditional salvage law, which this court chooses to follow, does not authorize a court of admiralty to vest title of a derelict vessel with the salvor. *See Platoro Limited, Inc. v. Unidentified Remains of a Vessel,* 695 F.2d 893, 903–04 (5th Cir.1983), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). Instead, plaintiff is entitled to a monetary sum as reward for its provision of salvage services. In deciding the amount to award for salvages services, the following factors are considered: (1) the labor expended by the salvors in rendering the salvage service, (2) the promptitude, skill, and energy displayed in rendering the service and saving the property, (3) the value of the property employed by the salvors in rendering the service and the danger to which such property was exposed, (4) the risk incurred by the salvors in securing the property from the impending peril, (5) the value of the property saved, and (6) the degree of danger from which the property

---

1. In the Order of August 16, 1996 (Doc. 6), upon the motion of plaintiff, Turner Marine Supply, Inc. was appointed substitute custodian of S/V Pangaea. The vessel was arrested at Turner Marine Supply, Inc's facilities in Mobile, Alabama.

2. To be eligible for a salvage award, a claimant must show that the vessel was in maritime peril from which it could not have been rescued without the salvor's assistance, that the act of salvage was a voluntary act unrelated to a preexisting official or contractual duty to the vessel owner, and that there was some degree of success in saving the vessel. *E.g., The Sabine,* 101 U.S. 384, 25 L.Ed. 982 (1879). "The peril to which a vessel is subjected need not be one of imminent danger of destruction or damage. Rather, it is sufficient that a vessel be subject to potential danger of damage or destruction to make her subject to salvage services." *Lancaster v. Smith,* 330 F.Supp. 65, 67 (S.D.Ala.1971) (citing *Fort Myers Shell & Dredging Co. v. Barge NBC 512,* 404 F.2d 137 (5th Cir.1968)).

was rescued. *The Blackwall,* 10 Wall. 1, 77 U.S. 1, 19 L.Ed. 870 (1869). In a case such as this where no one has made an appearance as owner of the derelict vessel, ordering that the vessel be sold and awarding one hundred percent of the proceeds as a salvage award is justified. *See Columbus–America Discovery Group,* 974 F.2d at 459; *Dominguez v. The Schooner Brindicate,* 204 F.Supp. 817 (D.P.R.1962). The court has decided to do just that.[3]

■ What remains to be determined, however, is: (1) who should receive a salvage award and (2) how much should be awarded to each recipient. No member of the crew[4] of plaintiff's tug which salvaged the S/V Pangaea has filed a salvor's claim. Nevertheless, such crew members who contributed to the salvage of the sailboat are still entitled to a salvor's award. *See* 46 U.S.C. § 10317 (1994); *The Steamer Adirondack,* 5 F. 213 (S.D.N.Y.1880). The apportionment of a salvage award among co-salvors—here, the crew of the tug and Falgout Brothers, Inc. as owner of the tug—is based on the relative participation and risk of each. Schoenbaum, *supra,* at 792.

The court has decided to follow the suggestion of *amicus curiae* Professor David Bederman by awarding the entire proceeds of the sale to plaintiff Falgout Brothers, Inc. on the condition that Falgout make salvage payments to crew members in amounts determined by the court. This course of action is quicker and more efficient than awarding plaintiff its due and holding the remainder of the proceeds in the court's registry until crew members file their individual claims.[5] To implement this decision, the court will need to know the name, rank, and extent of risk and participation of each crew member who assisted in the salvage of S/V Pangaea.

---

**3.** The decision to award one hundred percent to the salvors is also based on the fact that the costs plaintiff incurred in salvaging the S/V Pangaea exceed the book value of the vessel. Willey Aff. of February 17, 1997 at 2.

**4.** As used in this order, the word "crew" refers to the master or captain of the tug as well as subordinate deckhands, mates, etc.

**5.** The court also considered the course of action utilized in *M.O. Medina v. One Nylon Purse Seine,* 259 F.Supp. 769 (S.D.Cal.1966). In that case,

Plaintiff is hereby **ORDERED** to provided this information to the court via appropriate affidavit(s) on or before Tuesday, May 20, 1997.

Furthermore, it is hereby **ORDERED** that the United States Marshal of the Southern District of Alabama **SELL** the S/V Pangaea at a marshal's sale to be conducted forthwith under such conditions he deems fair and reasonable. The proceeds of said sale, minus fees and costs owing to the Marshal and the substitute custodian, shall be deposited in the court's registry and shall remain there until further order of the court.

---

the court ordered that the salvors of a derelict fishing net be awarded fifty percent of the proceeds from the sale of the net and that the rest be held in the registry of the court for a year and a day to give the owner time to come forth to claim the remainder of the proceeds. If no claim was filed during such time, the balance was to be paid to the salvors. This court declines to adopt such a procedure because, as noted earlier, plaintiff's salvage costs exceed the value of the S/V Pangaea.