[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14925

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-20739-CV-PCH

BLUE WATER MARINE SERVICES, INC.,
a Florida corporation doing business
as TowboatU.S. South Dade,

Plaintiff-Counter-
Defendant-Appellant,

versus

M/Y NATALITA III,
a 100-foot Azimut S.R.L. motor
yacht, her engines, apparel and
appurtenances, in rem,
NATALITA III LIMITED,

Defendants-Counter-
Claimants-Appellees,

SAGICOR GENERAL INSURANCE
(COMPANY) LTD.,
in personam,
ALL UNDERWRITERS SUBSCRIBING
TO COVER NOTE JY416008X, INCLUDING
SANTAM INSURANCE COMPANY LIMITED,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 8, 2009)

Before DUBINA, Chief Judge, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Blue Water Marine Services, Inc. ("Blue Water") appeals the district court's order denying enforcement of Blue Water's purported contract with the defendant, Natalita III, and denying Blue Water's claim for a pure salvage award. Blue Water also appeals the district court's closing of its case without addressing its claim against Santam Insurance, Natalita III's underwriter.

**I.**

On March 19, 2008, the yacht Natalita III ran aground on a reef in Biscayne National Park. The yacht's captains radioed a local tow company for assistance. Upon overhearing the radio call, Blue Water dispatched one of its boats to assist the yacht. After successfully removing the yacht to safe waters, Blue Water's captain asked a Natalita III captain to sign a form contract stating that Blue Water

2

was entitled to a pure salvage award for the rescue. Natalita III's captain signed the contract.

Natalita III's owners later refused to pay Blue Water the pure salvage award. Blue Water then sought to enforce the form contract provision in the district court under admiralty jurisdiction.[1] Following a bench trial, the district court sitting in equity found in favor of Natalita III. The district court found that Blue Water and Natalita III reached an oral agreement on the cost of services prior to Blue Water's rescue effort. As a result of this oral agreement, Blue Water could not recover a pure salvage award. In addition, the district court found that even if Blue Water was entitled to seek an award for pure salvage, the post-rescue form contract provision for pure salvage was unenforceable on a variety of equitable grounds, including duress and violation of public policy.

## II.

The district court's findings of fact must stand unless clearly erroneous, and it is settled that the clearly erroneous standard of review applies in admiralty cases. *McAllister v. United States*, 348 U.S. 19, 20, 75 S. Ct. 6, 8 (1954). In reviewing the district court's findings of fact and conclusions of law, we note that "[n]o greater scope of review is exercised by the appellate tribunals in admiralty cases

---

[1] Admiralty jurisdiction was proper under 28 U.S.C. § 1333.

3

than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure." *Id*.

Thus, findings of fact only will be reversed if they are clearly erroneous. *Id.* The

district court's interpretations of law or applications of law to particular facts are

subject to *de novo* review. *See, e.g.*, *Bose Corp. v. Consumers Union of U.S., Inc.*,

466 U.S. 485, 501, 104 S. Ct. 1949, 1959 (1984).

After reviewing the record, reading the parties' briefs and having the benefit

of oral argument, we conclude that the district court's findings of fact are not

clearly erroneous.

## III.

Blue Water first asserts that the district court erred by granting the

defendants' motion to bifurcate the trial, which allowed Natalita III to present her

affirmative defenses before Blue Water presented its case in chief. Federal Rule

of Civil Procedure 42(b) specifically allows for the bifurcation of issues at trial.

"For convenience, to avoid prejudice, or to expedite and economize, the court may

order a separate trial of one or more separate issues, claims, crossclaims,

counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). In *Harrington v.*

*Cleburne County Board of Education*, 251 F.3d 935, 938 (11th Cir. 2001), we

noted that "[Rule] 42(b) confers broad discretion on the district court in this area,

permitting bifurcation merely 'in furtherance of convenience.'" Thus, we conclude that Blue Water's procedural claims are without merit.[2]

Blue Water believes it is entitled to claim a pure salvage award on Natalita III because a Natalita III captain agreed that Blue Water was so entitled by signing a form contract provision providing for such an award after the rescue effort concluded. A pure salvage award is more than a payment for services rendered; it is "a reward given for perilous services, voluntarily rendered, and as an inducement to seamen and others to embark in such undertakings to save life and property." *The Blackwall*, 77 U.S. (10 Wall.) 1, 14, 19 L. Ed. 870 (1869). There are three elements to a pure salvage claim: marine peril; service voluntarily rendered when not required by duty or contract; and success in whole or in part, with the services rendered having contributed to such success. *The Sabine*, 101 U.S. 384, 384, 25 L. Ed. 982 (1879).

When there is a contract to undertake a salvage service or to provide some type of service to a distressed vessel, there is no "pure salvage." *See B.V. Bureau Wijsmuller v. United States*, 702 F.2d 333 (2d Cir. 1983). Rather, if there is a

---

[2] Blue Water claims that the district court did not give it the opportunity to be heard on the issue of bifurcation. The record shows that after the defendants filed their motion to bifurcate, the district court held a hearing where it considered Blue Water's memorandum in opposition to bifurcation, in addition to hearing oral arguments on the issue of bifurcation. Thus, we conclude that this argument similarly is without merit.

contract between the parties, then the services were rendered pursuant to the contract, not voluntarily. *Flagship Marine Serv. v. Belcher Towing Co.*, 966 F.2d 602 (11th Cir. 1992). "The fact that a shipowner requests a salvage service and that the salvors in response furnish it, standing alone, [however] does not create an implied contract so as to defeat a salvage claim." *Fort Myers Shell & Dredging Co. v. Barge NBC 512*, 404 F.2d 137, 139 (5th Cir. 1968).[3]

Blue Water argues that the district court erred in finding a pre-existing oral contract between Blue Water and Natalita III because there was insufficient evidence to support such a finding. The district court found that when those aboard the yacht inquired about the cost of Blue Water's services, Blue Water offered to provide its services at a lower hourly rate than one its competitors had offered, and those on the yacht accepted that hourly rate. The district court concluded that Blue Water's services were rendered pursuant to an oral agreement, thus defeating a claim for pure salvage. The district court relied on this court's decision in *Flagship Marine Services*, in which a marine service company saved a tugboat from sinking and then brought a claim for pure salvage, which the district

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

court granted. *See Flagship Marine Services*, 966 F.2d at 603. This court reversed and remanded, holding that the verbal exchange between the captains of the tugboat and marine service company created a valid oral agreement that barred the marine service company from recovering an award on a pure salvage basis because the services were not voluntarily rendered. *Id.* at 605–06. This court stated:

> Under the factual findings made by the district court, and in light of the evidence found in the record, we agree that there was no contract to pay a given sum for the services . . . rendered; nonetheless, we cannot agree with the district court's conclusion that the services . . . rendered were voluntary salvage services.
>
> Clearly, [the marine services company] had no initial duty to come to [the tugboat]'s assistance. Yet, when [the company] arrived on the scene, the exchange between [the boats' respective captains] created a binding engagement in which [the tugboat] undertook to pay [the marine services company] for its services, whether or not those services proved successful.

*Id.* at 605.

Here, the district court found that there was an actual oral contract between Blue Water and Natalita III before the services began. Therefore, Blue Water was not entitled to a pure salvage award for the services it provided after it had an obligation to perform for Natalita III. (R. 14 at 22.) Considering the factual findings of the district court and the evidence in the record, this court agrees that

7

there was a contract to pay a given sum for the services Blue Water rendered.

Furthermore, even if there was not a legal contract between the parties, at the very least there was an oral agreement that rendered Blue Water's services not voluntary. *See Flagship Marine Services*, 966 F.2d at 605 (holding that the verbal exchange between the captains of a tugboat and marine service company created a valid oral agreement that barred the marine service company from recovering an award on a pure salvage basis because the services were not voluntarily rendered).

The district court found in the alternative that the written contract was unenforceable because it was created under duress. The seminal case for issues of maritime duress is *The Elfrida*, 172 U.S. 186, 19 S. Ct. 146 (1898). In *The Elfrida*, the Supreme Court indicated that a salvage contract will be set aside if it was "corruptly entered into, or made under fraudulent representations, a clear mistake or suppression of important facts, in immediate danger to the ship, or under other circumstances amounting to compulsion, or when their enforcement would be contrary to equity and good conscience." *The Elfrida*, 172 U.S. at 192, 19 S. Ct. at 148. The district court concluded that Natalita III had no reasonable choice other than to sign the contract. The court found that the following facts created circumstances amounting to compulsion:

(1) Prior to the rescue, Blue Water did not discuss with or disclose to Natalita III's captains that it intended to treat the rescue as a pure salvage situation and that it would seek compensation under a pure salvage method;

(2) Blue Water had adequate time under the circumstances to provide Natalita III the salvage contract prior to undertaking the salvage, and Blue Water should have provided the written form contract after Natalita III's captains asked about paperwork and the method of payment prior to their assent to the rescue;

(3) Blue Water gave Natalita III's captain the option of either immediately signing the form contract or being abandoned late in the afternoon in an area where reefs continued to carry a peril and when the damage to the yacht was unknown;

(4) Blue Water represented to Natalita III that another tow and salvage company was incapable of performing the salvage job at hand.

The district court also found that the written contract was unenforceable because Blue Water violated public policy by violating its permit to operate. Blue Water operates its commercial towing and salvage assistance business within Biscayne National Park pursuant to a permit called a Commercial Use Authorization. The permit provides that Blue Water may provide assistance to

9

disabled vessels while serving and protecting park resources. The district court

found that Blue Water violated the terms of its permit because:

> A signed acknowledgment of services and charges from the visitor [is] required prior to being performed. The services and intent of this provision is to eliminate and prevent dishonest and misleading business practices, particularly the action of "bait and switch," informing the customer of one price and service before the job and then billing the customer for much more than the quoted price. A violation of these standards will be considered to be a violation of the terms of the permit.

(R. 14 at 15.)

The district court found these policy considerations especially compelling

given that Blue Water's claim is in equity, and the Supreme Court has made clear

that it is appropriate to set aside a salvage contract if it was, "corruptly entered

into, or made under fraudulent representations, a clear mistake or suppression of

important facts, in immediate danger to the ship, or under other circumstances

amounting to compulsion, or when their enforcement would be contrary to equity

and good conscience." *The Elfrida*, 172 U.S. at 192, 19 S. Ct. 148. Here, the

district court found specific conduct on the part of Blue Water that it considered to

be "contrary to equity and good conscience." Nothing in the record convinces this

court that the district court's findings were clearly erroneous. We conclude

10

therefore that the district court committed no reversible error in deciding not to enforce the contract.

In addition to its claim against Natalita III, Blue Water brought a claim against Santam Insurance, Natalita III's underwriter. Santam filed a Motion to Quash Service and Dismiss the Amended Complaint in the district court. The district court did not rule on the motion and did not address this separate claim before closing the case after the trial. Santam argues that in order to recover against Santam, Blue Water must first obtain a judgment against Santam's insured, Natalita III. Under the law of this circuit, however, Blue Water may assert an independent cause of action grounded upon the benefit accruing directly to Santam by virtue of Blue Water's salvage efforts. *See Cresci v. Billfisher*, 874 F.2d 1550, 1551 (11th Cir. 1989) (holding that plaintiff's claim against insurer for salvage is not a claim under the insurance policy, but rather an independent cause of action grounded upon the benefit accruing directly to the insurer by virtue of plaintiff's salvage efforts). Because Blue Water may have a viable claim against Santam under a pecuniary benefit theory, we REMAND Blue Water's claim against Santam for further proceedings by the district court.

**AFFIRMED and REMANDED.**