# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-31025

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2016

Lyle W. Cayce
Clerk

CAMERON EVANS,

Plaintiff

v.

VIDALIA DOCK & STORAGE COMPANY,

Defendant-Third Party Plaintiff - Appellant

v.

BRUCE OAKLEY, INCORPORATED,

Third Party Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:14-CV-2255

Before REAVLEY, DAVIS and JONES, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-31025

"A shipowner has an absolute nondelegable duty to provide a seaworthy vessel." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991).  This duty extends to barge owners "in a towage situation." *Consol. Grain & Barge Co. v. Marcona Conveyor Corp.*, 716 F.2d 1077, 1081 (5th Cir. 1983) (per curiam). The owner of a wrecked or imperiled vessel does not, however, owe a duty of seaworthiness to a would-be salvor.  We must decide whether third-party plaintiff Vidalia Dock & Storage Company ("Vidalia Dock") plausibly alleged that the BOI 227, a barge owned by third-party defendant Bruce Oakley, Inc. ("Oakley"), sank while under a contract for towage rather than salvage. Because, under the facts alleged by Vidalia Dock, the operation could only have been one of salvage, we conclude that Oakley did not owe a duty of seaworthiness to Vidalia Dock.

Bruce Evans, an employee of Vidalia Dock, was injured during an attempted rescue of the BOI 227, which had grounded on the banks of the Mississippi River after breaking free from its moorings.  Evans sued Vidalia Dock, and Vidalia Dock impleaded Oakley under Rule 14(c).  Vidalia Dock asserted a seaworthiness claim against Oakley.  Oakley then moved for dismissal under Rule 12(b)(6), and Vidalia Dock opposed the motion and supplemented its Rule 14(c) tender with additional factual allegations.  Upon the magistrate judge's report and recommendation, and after considering objections thereto, the district court granted judgment in favor of Oakley. Vidalia Dock timely appealed, and despite Oakley's arguments to the contrary, we have jurisdiction.  *See* 28 U.S.C. § 1292(a)(3).

If, as the district court ruled, Oakley owed no duty of seaworthiness to Vidalia Dock and Evans, judgment was proper.  As explained above, the answer to this question depends on the character of service provided by Vidalia Dock—towage or salvage.

No. 15-31025

"A towage contract . . . arises when one vessel is employed to expedite the movement of another." *Agrico Chem. Co. v. M/V Ben W. Martin*, 664 F.2d 85, 90 (5th Cir. 1981). The fact of towing is not dispositive. "The existence of a marine peril distinguishes a salvage contract from one for towage." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1114 (9th Cir. 1998). Thus, "[w]hen a tug is called or taken by a sound vessel as a mere means of saving time, or from considerations of convenience, the service is classed as towage; but if the vessel is disabled, and in need of assistance, it is a salvage service." *Id.* (quoting *The Flottbek*, 118 F. 954, 960 (9th Cir. 1902)). Marine peril exists where danger is "reasonably to be apprehended," and "if [a] vessel is stranded so that it is subject to the potential danger of damage or destruction she may well be a subject of salvage services." *Fort Myers Shell & Dredging Co. v. Barge NBC 512*, 404 F.2d 137, 139 (5th Cir. 1968).

According to Vidalia Dock, it "directly alleged that the BOI 227 was furnished to it by Oakley for towage operations." As the foregoing authorities show, this is insufficient to establish towage rather than salvage. We must ask whether the tow was meant to expedite the barge's movement or instead to rescue it from marine peril. We treat Vidalia Dock's allegations as true and draw all reasonable inferences in its favor.

In its original Rule 14(c) tender, Vidalia Dock alleged that Evans encountered the BOI 227 "during a mission to rescue the barge," and that this "rescue mission" was the cause of Evans' injury. It is alleged that the "emergency rescue mission by Vidalia Dock" occurred after the BOI 227 had broken free from its moorings, floated down the Mississippi River, and grounded upon the river's banks. The supplemental tender alleged that the barge sank while under tow during "efforts . . . to save the BOI 227 from loss."

Vidalia Docks' argument on appeal that "retrieving a barge from a mud bank is hardly maritime peril" runs headlong into its allegations of an

3

No. 15-31025

"emergency recuse mission" carried out in an effort "to save" the barge. Moreover, we have previously observed that retrieval of a grounded barge "may well" be salvage. *Fort Myers Shell & Dredging Co.*, 404 F.2d at 139.  Here, the allegations permit no other conclusion.  The mission was not to expedite the barge's travel but to "rescue" or "save" the barge in an "emergency" situation. This is salvage, not towage.

AFFIRMED.