[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15803
_____

D.C. Docket No. 4:13-cv-10171-JEM


ARNAUD GIRARD,

Plaintiff – Appellant,

versus

M/V "BLACKSHEEP," her boats, tackle, apparel, and furniture, engines, and
appurtenances, In Rem,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 3, 2016)

Before HULL and MARTIN, Circuit Judges, and WRIGHT,[*] District Judge.

MARTIN, Circuit Judge:

Arnaud Girard is a marine salvor, who works to rescue ships in peril.  In December 2013, he undertook a rescue mission for a 125-foot yacht known as the M/Y Blacksheep.  Afterward, he filed this action in rem against the Blacksheep, seeking a salvage award for services he provided to the yacht.  After a two-day bench trial, the District Court found that Mr. Girard failed to show that his services were necessary to the rescue of the Blacksheep, and entered judgment against him.  Because a claim for a salvage award does not require such a showing, we reverse and remand for proceedings consistent with this opinion.

## I.

On December 28, 2013, the Blacksheep was under the command of Captain Alan Wooldridge.  The vessel was located a few hundred feet offshore near the Galleon Marina in Key West, Florida.  While testing the port engines' controls, Captain Wooldridge heard a "clunk."  Captain Wooldridge instructed the vessel's engineer to investigate.  The engineer discovered that the port propeller shaft had dislocated from the gear box coupling and the yacht was taking on water.

---

[*] Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, sitting by designation.

Captain Wooldridge then made a radio distress call to the U.S. Coast Guard. He said: "I've got an emergency here. I'm just in the front of the Galleon Marina. My prop shaft's come out. I'm anchored. Could someone give me some assistance with some pumps please." In response to Captain Wooldridge's call, the Coast Guard announced over the radio:

> Coast Guard received a report of a vessel BLACKSHEEP taking on water near Galleon Marina. All vessels are requested to keep a sharp lookout and assist if possible. The United States Coast Guard sector Key West Florida out. Break.

Again, Mr. Girard is a professional maritime salvor and heard the call come over the radio. He responded within four minutes. When Mr. Girard arrived at the scene, Captain Wooldridge made clear that he wanted Mr. Girard's help and asked if Mr. Girard had a pump. At this point, there was about two feet of water in the bilge (the lowest internal part of a ship). Mr. Girard first deployed his high-capacity pump to dewater the bilge. Then, Mr. Girard, along with his co-salvor, Eric Denhart, dove under the Blacksheep. They repositioned the propeller shaft, bringing it closer to its proper location. Mr. Girard also installed a temporary patch to limit the amount of water coming into the boat. The Coast Guard assisted by placing a patch on the inside of the Blacksheep. Eventually, the Blacksheep was towed to the dock by Towboat U.S. Captain Wooldridge recorded the incident in his logbook, explaining that he had "coordinated safety

3

procedures to prevent any sinking of [the] vessel."

Mr. Girard brought a claim seeking a salvage award for the marine salvage operation. This type of action is an in rem action, meaning it is brought against the ship and any recovery would necessarily be limited by the value of the ship. The District Court held a two-day bench trial in December 2014 and ruled in favor of the Blacksheep. This appeal timely followed.

II.

A salvage award is "the compensation allowed to persons by whose voluntary assistance a ship at sea or her cargo or both have been saved in whole or in part from impending sea peril." The Sabine, 101 U.S. 384, 384, 25 L. Ed. 982, 982 (1879). In Klein v. Unidentified Wrecked & Abandoned Sailing Vessel, 758 F.2d 1511 (11th Cir. 1985), this court stated that, in order to obtain a salvage award, the salvor must prove three elements:

> (1) A maritime peril from which the ship or other property could not have been rescued without the salvor's assistance.
> (2) A voluntary act by the salvor—that is, he must be under no official or legal duty to render the assistance.
> (3) Success in saving, or in helping to save at least part of the property at risk.

Id. at 1515. The first prong of Klein's three-prong test requires two distinct showings: first, that the vessel was in "maritime peril" (or "marine peril") and, second, that the vessel "could not have been rescued without the salvor's assistance." Id. The District Court applied Klein. The court found that the

4

Blacksheep was in "marine peril." But, as to the second showing, the court found that Mr. Girard failed to show "what would have happened to the Vessel had [he] not arrived on-scene." The court then found that "Plaintiff's efforts were not necessary to rescue the Vessel" and that "[t]he Vessel would not have submerged or sustained additional damage without the assistance of Plaintiff." Because Mr. Girard failed to meet his burden under Klein by proving that the ship "could not have been rescued without the salvor's assistance," the District Court found Mr. Girard was not entitled to a salvage award.

Mr. Girard argues that this second showing required under the first prong of Klein—that the ship "could not have been rescued without the salvor's assistance"—is not a proper element of a salvage award claim. Rather, Mr. Girard argues, a plaintiff satisfies the first element of a marine salvage claim by establishing only "marine peril." Under binding precedent, his argument prevails.

The elements of a salvage award claim were articulated by the Supreme Court over a century ago. See The Sabine, 101 U.S. at 384, 25 L. Ed. at 982. In The Sabine, the Supreme Court held that "[t]hree elements are necessary to a valid salvage claim: 1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." Id. See also Legnos v. M/V Olga Jacob, 498 F.2d 666, 669–71 (5th Cir. 1974) (citing and applying the

5

The Sabine standard for a salvage award claim).[1]  Neither The Sabine nor Legnos requires a plaintiff to show that the vessel could not have been rescued without the salvor's assistance to satisfy the first prong.  Rather, all a plaintiff must show to establish the first element is that the ship was under a "marine peril."  As the former Fifth Circuit explained in Legnos, it is a "mistaken notion that for salvors to establish peril they must prove that their actions were necessary to eliminate or alleviate such condition.  The law of salvage makes no such demand."  Id. at 671. Klein's requirement that the ship "could not have been rescued without the salvor's assistance" is in clear conflict with this precedent.

Klein's "necessity" requirement in the first prong also undercuts the policy interests that the salvage award is intended to further.  The law of salvage is rooted in a public policy to encourage mariners to come to the aid of a ship in distress. See The Sabine, 101 U.S. at 384, 25 L. Ed. at 982; Mason v. Ship Blaireau, 6 U.S. (2 Cranch) 240, 266 (1804); Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft, 218 F.3d 1255, 1261 (11th Cir. 2000). Specifically, the law of salvage aims to induce "all to render aid in the face of marine peril," Legnos, 498 F.2d at 671 (emphasis added), and to do so "before it is a do-or-die wager with high risks."  Miss. Valley Barge Line Co. v. Indian Towing

---

[1] Under Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we are bound by all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

6

Co., 232 F.2d 750, 755 (5th Cir. 1956) (emphasis added).  A rule that limits compensation to those who can prove that the ship "could not have been rescued without the salvor's assistance" is at odds with these principles.  Legnos, 498 F.2d at 671; see also Mason, 6 U.S. (2 Cranch) at 266 (describing the law of salvage as a "liberal and enlarged" compensatory system).

Because the added requirement in the first prong of the Klein test is inconsistent with both Supreme Court and binding circuit precedent, it cannot govern here.[2]  To satisfy the first element of a salvage award claim, the salvor must show "marine peril," but need not make the additional showing that the ship "could not have been rescued without the salvor's assistance."  Because the District Court found that the Blacksheep was in "marine peril"—a finding we do not disturb— Mr. Girard has established the first element of his salvage award claim.

---

[2]  "Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court."  Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

While the first prong of the Klein test conflicts with our prior panel precedent, the same is not true of the second and third prongs of Klein's test.  They closely track the second and third elements of a salvage award claim as set forth by the Supreme Court in The Sabine and by our prior panel in Legnos.  Compare Klein, 758 F.2d at 1515, with The Sabine, 101 U.S. at 384, 25 L. Ed. at 982, and Legnos, 498 F.2d at 669–71.  The second and third prongs of the Klein test thus remain good law.

III.

Because the District Court found that Mr. Girard failed to satisfy the first prong of the <u>Klein</u> test, the District Court ruled against him without reaching the second or third prongs of the test.  The second prong—that the salvor's services were rendered voluntarily—is not disputed.  The third prong requires a showing that the salvor succeeded "in saving, or in helping to save at least part of the property at risk."  <u>Klein</u>, 758 F.2d at 1515.  The District Court's findings and some facts from the record could support the conclusion that Mr. Girard's actions contributed to saving the Blacksheep.  Mr. Girard deployed his high-capacity dewatering pump; dove below the ship where he successfully pushed the propeller shaft twelve inches closer to its intended position; and applied packing material to prevent further flooding.  But we will leave it to the sound judgment of the District Court, in its role as the factfinder, to decide whether Mr. Girard contributed to saving the Blacksheep and, if he did, the value of any salvage award.

**REVERSED AND REMANDED.**