[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10688
Non-Argument Calendar

_____

D.C. Docket No. 8:12-cv-00656-JSM-EAJ

FRANCISCO MARTIN,

Plaintiff-Appellant,

versus

ONE BRONZE ROD,
ONE CHEST, including its contents and associated artifacts,
ONE CHEST, including its contents and associated artifacts,
ONE CHEST, including its contents and associated artifacts,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 29, 2014)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Francisco Martin sought warrants of arrest in rem against one bronze rod and three chests, including their contents and associated artifacts, in connection with his claims for salvage, forfeiture, and/or possession brought under federal admiralty jurisdiction in the district court.  Martin believes the res to be cargo of the Gasparilla Pirates buried over 150 years ago.  The district court denied his motion for the issuance of a warrant of arrest in rem as to the three chests, which remain buried on private and state-owned lands, but granted it as to the bronze rod, which Martin had already seized, and eventually awarded Martin full title to the rod as compensation for his salvage services.  Martin now appeals the district court's rulings as to the three chests.  After careful review, we affirm.

## I. BACKGROUND

Martin alleges that through extensive research, including deciphering codes engraved on copper and pewter plates, he discovered the location of what he believes to be piratical cargo buried by the Gasparilla Pirates over 150 years ago in the Peace River Basin in DeSoto County, Florida.  Martin already found and took possession of one bronze rod, which he removed by hand from the river bottom, 15% of the rod having been buried.  He also claims that he has pinpointed the locations of three buried chests using a deep penetrating metal detector, but he has been prevented from unearthing the chests because they are on private property

and state-owned lands. Notably, he alleges that the rod and the chests are different portions of the same res.

Martin filed a verified amended complaint in the district court, which included a salvage claim pursuant to the law of salvage, a forfeiture claim pursuant to 33 U.S.C. §§ 383, 384, and 385,[1] and possessory and ownership claims pursuant

---

[1]      Section 383 provides:

> The commander and crew of any merchant vessel of the United States, owned wholly, or in part, by a citizen thereof, may oppose and defend against any aggression, search, restraint, depredation, or seizure, which shall be attempted upon such vessel, or upon any other vessel so owned, by the commander or crew of any armed vessel whatsoever, not being a public armed vessel of some nation in amity with the United States, and may subdue and capture the same; and may also retake any vessel so owned which may have been captured by the commander or crew of any such armed vessel, and send the same into any port of the United States.

33 U.S.C. § 383. Section 384 provides:

> Whenever any vessel, which shall have been built, purchased, fitted out in whole or in part, or held for the purpose of being employed in the commission of any piratical aggression, search, restraint, depredation, or seizure, or in the commission of any other act of piracy as defined by the law of nations, or from which any piratical aggression, search, restraint, depredation, or seizure shall have been first attempted or made, is captured and brought into or captured in any port of the United States, the same shall be adjudged and condemned to their use, and that of the captors after due process and trial in any court having admiralty jurisdiction, and which shall be holden for the district into which such captured vessel shall be brought; and the same court shall thereupon order a sale and distribution thereof accordingly, and at its discretion.

Id. § 384. Section 385, which provides for the condemnation of piratical vessels upon capture by any public-armed ship, is not applicable to Martin's case, as his claims do not allege capture by any such ship. See id. § 385.

3

to the law of finds.[2]  He also filed a motion requesting the issuance of a warrant of

arrest in rem against the rod and the chests under Rules C and G of the

Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture

Actions to the Federal Rules of Civil Procedure.[3]  The magistrate judge found that

Martin had established a valid salvage claim as to the rod, but not the chests, and

rejected all other claims.  Accordingly, the magistrate granted Martin's motion for

the issuance of a warrant of arrest in rem for the rod and denied his motion in all

other respects.

Martin then filed a motion for reconsideration, arguing that the magistrate

erred in refusing to issue a warrant of arrest in rem for the chests.  The magistrate

judge denied that motion, and Martin filed objections to the magistrate's order.

---

[2]    Martin does not sufficiently raise any argument as to his claim under the law of finds on appeal; he includes only one sentence in his Statement of the Case declaring that he seeks title to the chests alternatively under the law of finds, which is insufficient to raise the issue for review.  See, e.g., Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) ("Although Greenbriar refers to the district court's dismissal of its amendment in its Statement of the Case in its initial brief, it elaborates no arguments on the merits as to this issue in its initial or reply brief.  Accordingly, the issue is deemed waived.").

[3]    Rule C of the Supplemental Rules for Admiralty and Maritime Claims provides for maritime actions in rem to enforce any maritime lien or when a federal statute authorizes such an action.  Rule C states that "[i]f the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action."  Fed. R. Civ. P. Supp. R. C(3)(a)(i).

Rule G applies in conjunction with Rule C and governs forfeiture actions in rem arising from a federal statute.  It provides, inter alia, that "the court—on finding probable cause—must issue a warrant to arrest the property if it is not in the government's possession, custody, or control and is not subject to a judicial restraining order."  Id. R. G(3)(b)(ii).

4

The district court subsequently overruled Martin's objections and affirmed the magistrate's order denying Martin's motion for reconsideration. Martin then filed a Notice of Interlocutory Appeal from the district court's order affirming the magistrate's denial of his motion for reconsideration of the order refusing to issue a warrant of arrest in rem for the chests. This Court dismissed the interlocutory appeal for lack of appellate jurisdiction, finding that the appeal was from a nonfinal order of the district court.

Martin filed a petition for reconsideration with the Eleventh Circuit, and while his petition was pending, the district court ordered the case to be administratively closed "without prejudice to Plaintiff to move to reopen the case if he receives a favourable ruling from the Eleventh Circuit." After this Court denied his petition for reconsideration, Martin filed a motion to reopen the case with the district court only "to seek a salvage or forfeiture award for his seizure of [the bronze rod] (or, in the alternative, title to [the rod])." He included one sentence about the chests in his motion, stating that he "should be given leave to amend his complaint as against [the chests] upon their eventual actual seizure by Martin."

The district court granted Martin's motion to reopen "for the sole purpose of permitting Plaintiff to seek a salvage or forfeiture award related to his seizure of Defendant One Bronze Rod." The court denied Martin's request for leave to amend his complaint upon seizure of the chests, finding that he failed to state any

5

reason why the court should permit amendment at such a late date.  The court noted that the magistrate's order denying Martin's motion for a warrant of arrest in rem against the chests did not contemplate amendment and that Martin chose to file an interlocutory appeal to the Eleventh Circuit rather than seek amendment.

After the district court granted his motion to reopen, Martin filed a motion for judgment on the pleadings, claiming a right to the bronze rod or the proceeds from the sale thereof under salvage and forfeiture law.  He also declared that "[f]or purposes of appeal, reconsideration and/or other review, Plaintiff preserves his claims regarding Defendants Chests."  The court referred Martin's motion for judgment on the pleadings to the magistrate, who again rejected Martin's forfeiture claim under § 384 but found that Martin had established a valid salvage claim. The magistrate recommended that Martin be awarded title to the rod, and the district court adopted the magistrate's Report and Recommendation on all accounts, awarding Martin title to the rod as compensation for his salvage services.[4]  The court entered final judgment, granting Martin full title to the rod and dismissing his amended complaint in all other respects.  Martin now appeals.

---

[4]    Martin had attached a 3.5-inch segment of the rod to his amended complaint, turning over custody of the rod to the court, and the magistrate judge ordered the clerk of the court to temporarily take possession of the segment.  Then, after directing the clerk to issue a warrant of arrest in rem for the rod, the magistrate, upon Martin's motion, appointed Martin substitute custodian of the rod and directed the United States Marshal to surrender possession of the rod to Martin.  After the issuance of the warrant of arrest in rem for the rod, Martin submitted to the court proof of publication, which gave notice of the action in rem against the rod and the

6

## II. DISCUSSION

We review a judgment on the pleadings de novo. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). On appeal, Martin challenges the lower court's rejection of his salvage and forfeiture claims as to the chests.[5] He also avers that the lower court erred in ruling that it lacked constructive in rem jurisdiction over the chests.

Under Rule C of the Supplemental Rules for Admiralty and Maritime Claims, a party may bring an action in rem to enforce any maritime lien or if a federal statute provides for such an action. See Fed. R. Civ. P. Supp. R. C(1). If the court determines that a prima facie case exists for an in rem action, "the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Id. R. C(3)(a)(i). Under Rule

---

arrest thereof. Martin repeatedly demonstrated to the district court that no one had come forward claiming title to the rod, and the court granted Martin's motion to reopen the case to allow him to seek a salvage or forfeiture award as to the rod. The court then granted him full title to the rod.

[5] Martin's Notice of Appeal identifies the district court's final judgment, which granted him full title to the bronze rod and dismissed his amended complaint in all other respects, as the order from which he appeals. Although the district court reopened the case after Martin's interlocutory appeal to this Court solely to allow Martin to seek further action as to the rod, because "the appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment," Barfield v. Brierton, 883 F.2d 923, 930 (11th Cir. 1989), his Notice of Appeal is sufficient to allow review of the district court's orders regarding the chests as well. See 16A Charles Alan Wright et al., Federal Practice and Procedure § 3949.4, at 100–05 (4th ed. 2008) ("A notice of appeal that names the final judgment suffices to support review of all earlier orders that merge in the final judgment . . . , at least if the earlier orders are part of the progression that led up to the judgment rather than being separate from that progression." (footnote omitted)).

G, where an <u>in rem</u> forfeiture action arises from a federal statute, "the court—on finding probable cause—must issue a warrant to arrest the property if it is not in the government's possession, custody, or control." <u>Id.</u> R. G(3)(b)(ii). In this case, the magistrate judge found, and the district court affirmed, that Martin failed to establish either a prima facie case or probable cause pursuant to Rules C and G justifying arrest <u>in rem</u> of the three chests under either salvage or forfeiture law. For the following reasons, we affirm.

A. <u>Salvage</u>

Although the magistrate judge and the district court held that Martin had a viable salvage claim with respect to the bronze rod, the lower courts rejected his salvage claim with respect to the three chests. We agree.

"Salvage is the compensation allowed to persons by whose assistance a ship or her cargo has been saved, in whole or in part, from impending peril on the sea, or in recovering such property from actual loss, as in cases of shipwreck, derelict, or recapture." <u>Simmons v. The S.S. Jefferson</u>, 215 U.S. 130, 139–40, 30 S. Ct. 54, 57 (1909) (internal quotation marks omitted). A salvor has a lien on the property saved under maritime law, which allows him to maintain a suit <u>in rem</u> against the ship or cargo. <u>The Sabine</u>, 101 U.S. 384, 386 (1879). "[W]hen a party files an <u>in rem</u> complaint, the court issues a warrant for the arrest of the <u>res</u> and the <u>res</u> remains in the court's custody for the remainder of the proceedings." <u>Odyssey</u>

Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1171 (11th Cir. 2011). Three elements are necessary to establish a valid claim for a salvage award: (1) a maritime peril from which the ship or other property could not have been rescued without the salvor's assistance; (2) a voluntary act by the salvor under no preexisting official or contractual duty to render assistance; and (3) success in saving or in helping to save at least part of the property at risk. The Sabine, 101 U.S. at 384; Klein v. Unidentified Wrecked & Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir. 1985).

"Success is essential to the claim; as if the property is not saved, or if it perish, or in case of capture if it is not retaken, no compensation can be allowed." The Blackwall, 77 U.S. (10 Wall.) 1, 12 (1869). Success in recovering the res is especially important because the court is required to have "exclusive custody and control over the property . . . so as to be able to adjudicate rights in it that are binding against the world." Odyssey Marine Exploration, 657 F.3d at 1171 (internal quotation marks omitted). In certain cases, however, courts have issued arrest warrants and exercised in rem jurisdiction over property not yet in the actual possession of the court where part of a shipwreck is recovered. See, e.g., R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 964 (4th Cir. 1999) ("The propriety of exercising in rem jurisdiction over an entire ship wreck within the court's territorial jurisdiction when only part of that wreck is actually presented to a court

9

rests upon the fiction that the res is not divided and that therefore possession of some of it is constructively possession of all.").

Regarding his success in salvaging the chests, Martin alleges only that he has located three "large metallic objects" that he believes are piratical cargo consisting of copper chests containing gold, silver, and jewelry.  He nevertheless argues that he was successful in recovering part of the imperiled res to which the chests belong by salvaging the rod.  Accordingly, he asks this Court to adopt a theory of constructive in rem jurisdiction over the chests based on his successful recovery of the rod.  However, we agree with the lower courts that Martin has not sufficiently demonstrated that the rod and the chests are part of an undivided res so as to allow the court to exercise constructive in rem jurisdiction over the chests based on his salvage of the rod.  To the contrary, in his amended complaint Martin describes the chests as "isolated and not in geographical association with any shipwreck."  Moreover, Martin cites no case indicating that a theory of constructive possession, which courts have used to exercise constructive in rem jurisdiction over an entire shipwreck when only part of the wreck is presented to the court, extends to separate items of cargo that are isolated from one another and

do not hail from any shipwreck.[6]  And we decline the opportunity to extend the theory in such a way under the circumstances of this case.

As Martin has otherwise failed to adequately plead success in whole or in part in salvaging the chests, he has not established a valid salvage claim as to the chests.[7]  Thus, we find that the lower courts did not err in refusing to issue a warrant of arrest in rem against the chests under the law of salvage.

B. Forfeiture

The magistrate judge and the district court found that Martin failed to establish a viable forfeiture claim with respect to the three chests (or the bronze rod for that matter).  We agree.

Martin argues that he established a forfeiture claim against the chests under 33 U.S.C. §§ 383 and 384.  Section 383, entitled "Resistance of pirates by merchant vessels," authorizes any merchant vessel owned by a United States

---

[6]    Martin does allege that he has located the shipwreck of a three-mastered schooner operated by the Gasparilla Pirates in the Peace River Basin, and he also alleges that the rod and the chests were all carried on board that ship.  However, he repeatedly asserts that the chests were intentionally buried—as opposed to being scattered by the sinking of any ship—and are "not in geographical association with any shipwreck."  The circumstances of this case are therefore distinct from those in which courts have applied a theory of constructive in rem jurisdiction over an entire shipwreck based on actual possession of a part thereof.

[7]    Because we find that Martin's salvage claim fails on the element of success, we need not address the other two elements.

11

citizen[8] to "oppose and defend against any aggression, search, restraint, depredation or seizure" by a piratical vessel and to capture the vessel and retake any other ship that the vessel previously captured.  33 U.S.C. § 383.  Section 384, entitled "Condemnation of piratical vessels," provides:

> Whenever any vessel, which shall have been built, purchased, fitted out in whole or in part, or held for the purpose of being employed in the commission of any piratical aggression, search, restraint, depredation, or seizure, or in the commission of any other act of piracy . . . is captured and brought into or captured in any port of the United States, the same shall be adjudged and condemned to their use, and that of the captors after due process and trial in any court having admiralty jurisdiction . . . ; and the same court shall thereupon order a sale and distribution thereof accordingly, and at its discretion.

Id. § 384.  These provisions fall within a chapter of the United States Code entitled "Regulations for the Suppression of Piracy," and the cases triggering application of §§ 383 and 384 are distinguishable from Martin's circumstances.  See, e.g., The City of Mexico, 28 F. 148, 150 (S.D. Fla. 1886) (dismissing a claim for forfeiture of a vessel as prize because the vessel had not committed any overt act of piracy); The Chapman, 5 F. Cas. 471, 476 (N.D. Cal. 1864) (determining that the captured vessel did not fall under the provisions relating to piracy and that, consequently, the captors of the vessel were not entitled to any proceeds resulting from the condemnation of the vessel because its seizure was not authorized under those

---

[8] Martin alleged in his amended complaint that he is the owner and commander of a merchant vessel.

provisions); The Marianna Flora, 24 U.S. (11 Wheat.) 1, 2 (1825) (deciding whether an armed vessel's attack upon a United States armed schooner constituted an act of piratical aggression).

The magistrate judge found, and the district court affirmed, that Martin failed to demonstrate a sufficient nexus between the "large metallic objects" he detected and piratical activity to support a forfeiture action against the rod or the chests.  Alternatively, the magistrate found in her denial of Martin's motion for reconsideration, which the district court affirmed, that Martin failed to establish that he had captured the chests for purposes of a forfeiture claim against them under §§ 383 and 384.  Because we agree that Martin failed to establish that he captured the chests, we need not comment on whether he demonstrated a sufficient nexus between the chests and piratical activity.

Even assuming, but expressly not deciding, that cargo separate from a vessel—the rod and the chests here—can give rise to a forfeiture action in rem under these statutes, Martin has not established that he has captured the chests so as to merit the issuance of a warrant of arrest in rem against them.  It is undisputed that he has not actually captured the chests.  Instead, Martin asks us to adopt a theory of constructive in rem jurisdiction as to the chests based on his seizure of the rod, arguing that they are all part of the same res, and he contends that the district court erred in not including the chests in the arrest warrant issued for the

rod based on this constructive capture.  However, we decline to adopt such a theory under the circumstances of this case for the same reasons we declined to find constructive possession of the chests under salvage law.  See supra Part II.A. We therefore affirm the district court's finding that the forfeiture provisions of Rule G do not authorize arrest of the chests.

Because Martin failed to establish a valid salvage or forfeiture claim for arrest of the chests under Rule C or Rule G, the judgment of the district court is

AFFIRMED.