13-3605(L)
Jesner v. Arab Bank

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**


    At a stated term of the United States Court of Appeals
for the Second Circuit, held at the Thurgood Marshall United
States Courthouse, 40 Foley Square, in the City of New York,
on the 9th day of May, two thousand sixteen.

PRESENT: ROBERT A. KATZMANN,
                              _Chief Judge_,
              DENNIS JACOBS,
              JOSÉ A. CABRANES,
              ROSEMARY S. POOLER,
              REENA RAGGI,
              RICHARD C. WESLEY,
              PETER W. HALL,
              DEBRA ANN LIVINGSTON,
              GERARD E. LYNCH,
              DENNY CHIN,
              RAYMOND J. LOHIER, JR.,
              SUSAN L. CARNEY,
              CHRISTOPHER F. DRONEY,
                              _Circuit Judges_.

- - - - - - - - - - - - - - - - - -x

**In Re: Arab Bank, PLC Alien Tort**      Nos. 13-3605, 13-3620,
**Statute Litigation**                             13-3635, 13-4650,
                                                       13-4652

- - - - - - - - - - - - - - - - - -x

For Plaintiffs-              Michael E. Elsner and John M.
Appellants:                 Eubanks, Motley Rice LLC, Mount
                            Pleasant, South Carolina.

For Defendants-             Stephen M. Shapiro, Timothy S.
Appellees:                  Bishop, and Chad M. Clamage, Mayer
                            Brown LLP, Chicago, Illinois.

                        Kevin Walsh, Douglas W. Mateyaschuk,
                        and Steven J. Young, DLA Piper LLP
                        (US), New York, New York.

For Amicus Curiae-      Neal Kumar Katyal and Jessica L.
The Hashemite Kingdom   Ellsworth, Hogan Lovells US LLP,
of Jordan:              Washington, District of Columbia.

**ORDER**

Following disposition of this appeal, an active judge of the Court requested a poll on whether to rehear the case en banc. A poll having been conducted and there being no majority favoring en banc review, rehearing en banc is hereby **DENIED**.

Dennis Jacobs, Circuit Judge, joined by José A. Cabranes, Reena Raggi, and Debra Ann Livingston, Circuit Judges, concurs by opinion in the denial of rehearing en banc.

José A. Cabranes, Circuit Judge, joined by Dennis Jacobs, Reena Raggi, and Debra Ann Livingston, Circuit Judges, concurs by opinion in the denial of rehearing en banc.

Rosemary S. Pooler, Circuit Judge, joined by Denny Chin and Susan L. Carney, Circuit Judges, dissents by opinion from the denial of rehearing en banc.

Denny Chin, Circuit Judge, joined by Susan L. Carney, Circuit Judge, dissents by opinion from the denial of rehearing en banc.

                        FOR THE COURT:
                        CATHERINE O'HAGAN WOLFE, CLERK

DENNIS JACOBS, joined by JOSÉ A. CABRANES, REENA RAGGI, and DEBRA ANN LIVINGSTON, Circuit Judges, concurring in the denial of rehearing in banc.

I concur in the denial of in banc review of this case; rehearing would serve no purpose remotely commensurate with the effort it would entail.

The panel opinion grudgingly rejects plaintiffs' claim as barred by our decision in Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 (2d Cir. 2010) ("Kiobel I"), which held that customary international law, as enforced by the Alien Tort Statute ("ATS"), does not regulate corporate conduct. The panel opinion goes on to attack Kiobel I, and says it is constrained unhappily to follow it. Hence the in banc poll initiated by the panel itself.

Although the seven other judges who voted against in banc review do not necessarily endorse Kiobel I (or reach the merits of it), there is consensus that intervening developments obviate any need to go in banc.

*  *  *

Back in 2011, this Court rejected in banc review of this issue. See Kiobel v. Royal Dutch Petroleum Co., 642 F.3d 379, 380 (2d Cir. 2011). The Supreme Court took up the case, but (after oral argument) required briefing on an alternative

1

ground: whether the ATS has extraterritorial effect. The Supreme Court then held that it does not. Kiobel v. Royal Dutch Petroleum Co., 133 S.Ct. 1659, 1669 (2013) ("Kiobel II").

Since the population of cases dismissible under Kiobel I is largely coextensive with those dismissible under Kiobel II, several conclusions follow:

● The principle of Kiobel I has been largely overtaken, and its importance for outcomes has been sharply eroded. See Flomo v. Firestone Nat'l Rubber Co., LLC, 643 F.3d 1013, 1025 (7th Cir. 2011) (Posner, J.) ("Deny extraterritorial application, and the statute would be superfluous . . . .").

● This present appeal was subject to two easy (alternative) dispositions: affirm on the basis of Kiobel I (without lamentation) or remand for the district court to consider the case under Kiobel II. See Kiobel II, 133 S.Ct. at 1669.

● There is no reason to consider or reconsider Kiobel I in banc in this appeal.

* * *

This appeal could have been straightforwardly decided under Kiobel II, which held that the presumption against extraterritoriality can be displaced only

2

if the "claims touch[ed] and concern[ed] the territory of the United States"; that they must do so with "sufficient force"; and that "mere corporate presence" (for example) is not enough.  Id.  Kiobel II emphasizes that this must be a high hurdle, given the danger of judicial meddling in the affairs of foreign countries:

> [T]he danger of unwarranted judicial interference in the conduct of foreign policy is magnified in the context of the ATS, because the question is not what Congress has done but instead what courts may do . . . These concerns, which are implicated in any case arising under the ATS, are all the more pressing when the question is whether a cause of action under the ATS reaches conduct within the territory of another sovereign . . . The principles underlying the presumption against extraterritoriality thus constrain courts exercising their power under the ATS.

Id. at 1664-65.

In this case, the underlying offense against the law of nations is terrorism against citizens of Israel by four Palestinian terrorist groups.  Arab Bank, PLC, which is headquartered in Jordan, is named as defendant because funds allegedly passed through its branches to other countries for distribution to terrorists.

The only contact with the United States mentioned in the Arab Bank opinion is that terrorist groups used branches of Arab Bank in a score of countries (including a single U.S. branch, in Manhattan) for, among other ordinary transactions, the conversion of funds from one currency to another.  See

3

In re Arab Bank, PLC Alien Tort Statute Litig., 808 F.3d 144, 149-50 (2d Cir. 2015) ("Arab Bank then created individual bank accounts . . . often routing the transfers through its New York branch in order to convert Saudi currency into Israeli currency."). The New York branch is not differentiated in any way from Arab Bank's numerous other branches. This is no more than the "mere corporate presence" that is insufficient to displace the presumption against extraterritoriality. Kiobel II, 133 S.Ct. at 1669.

In the (unlikely) event that plaintiffs could somehow plead around Kiobel II, they would face a separate formidable barrier: the mens rea requirement. See Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 259 (2d Cir. 2009). As the panel opinion emphasizes, plaintiffs do allege knowledge. See Arab Bank, 808 F.3d at 150 ("According to the plaintiffs, Arab Bank *knew* that the donations were being collected for terrorist attacks . . . Again, responsible officials at Arab Bank purportedly *knew* that the accounts of these various organizations and individuals were being used to fund the suicide bombings and other attacks sponsored by the terrorist organizations.") (emphasis added). However, the standard "for aiding and abetting liability in ATS actions is purpose rather than knowledge alone." Presbyterian Church, 582 F.3d at 259.

4

It is thus evident that the <u>Arab Bank</u> panel opinion steered deliberately into controversy. That impression is confirmed by the slender pretexts advanced by the panel for refusing to consider extraterritoriality.

The panel considers it "unwise to decide the difficult and sensitive issue of whether the clearing of foreign dollar-denominated payments [in simpler terms, money] through a branch in New York could, under these circumstances, displace the presumption against the extraterritorial application of the ATS . . . ." <u>Arab Bank</u>, 808 F.3d at 158.[1] But it would have been simpler to remand for the district court to decide that easy question (as other circuit courts are doing) than to go <u>in banc</u> to decide a question that produced dueling opinions in <u>Kiobel I</u>. It is as though Sisyphus, seeing the hill, elected to push upward instead of just going around.

The panel decision notes that <u>Kiobel II</u> was "not the focus of either the district court's decision or the briefing on appeal." <u>Id.</u> But this need not boggle judicial ingenuity: the panel could have remanded in light of <u>Kiobel II</u>, or it could

---

[1] This is a kind of transaction that can be done at an automated airport kiosk.

have asked for supplemental briefing.  It is not recommended appellate craft to avoid so easy a disposition and instead strain to revisit Circuit precedent in banc.

\* \* \*

The circuit split that so worries the Arab Bank panel is illusory.  The panel opinion conjures up a circuit split from these cases:

- Two of the decisions pre-date Kiobel II; so those panels did not have the option of dismissal or remand on the ground of extraterritoriality.  See Flomo, 643 F.3d at 1021 (issued almost two years before Kiobel II); Romero v. Drummond Co., Inc., 552 F.3d 1303, 1315 (11th Cir. 2008) (issued more than four years before Kiobel II).

- The rest were decided on the basis of Kiobel II.  See Doe I v. Nestle USA, Inc., 766 F.3d 1013, 1027-28 (9th Cir. 2014) ("We decline to resolve the extraterritoriality issue, and instead remand to allow the plaintiffs to amend their complaint in light of *Kiobel II* . . . It is common practice to allow plaintiffs to amend their pleadings to accommodate changes in the law . . . ."); Doe VIII v. Exxon Mobil Corp., 527 F. App'x 7 (D.C. Cir. 2013) ("[I]n light of intervening

6

changes in governing law regarding the extraterritorial reach of the

Alien Tort Statute, *see* [Kiobel II], . . . the Alien Tort Statute claims

[are] remanded to the District Court for further consideration.").

- As to Al Shimari v. CACI Premier Tech., Inc., 758 F.3d 516, 530

(4th Cir. 2014), cited by the Arab Bank panel as "see also": the case

was decided solely on the basis of Kiobel II: "[P]laintiffs' ATS claims

'touch and concern' the territory of the United States with sufficient

force to displace the presumption against extraterritorial application

. . . .".

All this is by way of saying that this appeal is insufficiently important or

consequential to warrant review in banc.

* * *

In sum, the panel's angst in having to follow Kiobel I was self-inflicted.

The appeal could have been resolved under Kiobel II; if the problem was lack of

briefing, briefing could have been ordered; if finding the right answer under

Kiobel II was a strain on the panel, it could have remanded; if the easiest course

was to follow a precedent that the panel dislikes, it could have done what

appellate judges must frequently do: swallow hard. The one course that makes

7

no sense is to force difficulties, reel off dicta criticizing our precedent, and seek <u>in</u> <u>banc</u> consideration of a doctrine that now has sharply reduced application. Going <u>in banc</u> on this would do nothing but supply catnip for law clerks looking to teach.

A further consideration: <u>Kiobel I</u> was sharply contested within the panel; there was friction, heat and light in the <u>Kiobel I</u> panel opinions, and over panel rehearing and the (defeated) 2011 <u>in banc</u> initiative. There is even less reason now than then to reconsider <u>in banc</u> an issue so highly charged. More to the point, the Supreme Court will have two vigorous Second Circuit opinions to consider if that Court decides one day to revisit a question that will rarely again be asked.

In this Circuit, a case may one day arise that cannot be disposed of under <u>Kiobel II</u>, at a time when a circuit split has opened, and when the prospect looms of many such cases. If and when that comes to pass, it may be worth our time to consider the issue <u>in banc</u>. That time may never come; it has certainly not arrived.

JOSÉ A. CABRANES, *Circuit Judge*, joined by Judges JACOBS, RAGGI, and LIVINGSTON, concurring in the denial of rehearing en banc:

Judge Pooler's dissent from the denial of rehearing en banc calls to mind the insight of our esteemed late colleague, Judge Frank X. Altimari: "if attorneys want to know what the law is not, then they should read the dissent."[1] Indeed, Judge Pooler herself takes the view that her dissent is an "oddit[y]" that "has as much force of law as if [her] views were published in a letter to the editor of [her] favorite local newspaper."[2]

Both sides of the Alien Tort Statute ("ATS")[3] corporate-liability debate were fully explicated in *Kiobel I*, and that debate need not be rehashed here.[4] Accordingly, I write only to correct two of the misconceptions in Judge Pooler's dissent.

First, there is Judge Pooler's untenable suggestion that "*Kiobel II* strongly suggests that corporate liability *does* exist under the ATS,"[5] which echoes the panel's position that "*Kiobel II* . . . cast[s] a shadow on *Kiobel I* in several ways."[6]

---

[1] Frank X. Altimari, *The Practice of Dissenting in the Second Circuit*, 59 BROOK. L. REV. 275, 284 (1993); *see also Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1188 (10th Cir. 2014) ("This is one of those instances in which the dissent clearly tells us what the law is not. It is not as if the proposition had not occurred to the majority of the Court.").

[2] *United States v. Stewart*, 597 F.3d 514, 519 (2d Cir. 2010) (Pooler, J., concurring in the denial of rehearing en banc).

[3] 28 U.S.C. § 1350.

[4] *See generally Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010) ("*Kiobel I*"), *aff'd on other grounds*, 133 S. Ct. 1659 (2013) ("*Kiobel II*"); *Kiobel I*, 631 F.3d at 149–96 (Leval, J., concurring only in the judgment). Notably, the *Kiobel I* panel's three judges agreed that, "for a complaint to properly allege a defendant's complicity in human rights abuses perpetrated by officials of a foreign government, it must plead facts supporting a reasonable inference that the defendant acted with a purpose of bringing about the abuses." *Kiobel I*, 621 F.3d at 188 (Leval, J., concurring only in the judgment).

[5] Pooler, J., op. at 10 (emphasis in original).

1

Reading tea leaves, Judge Pooler and the panel divine significance from a single sentence in the Chief Justice's opinion for the Court: "Corporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices."[7] According to Judge Pooler, this line "would be utterly incomprehensible to include if the Court also believed corporations were *categorically* immune from suit under the ATS."[8] The panel agrees: "if corporate liability under the ATS were not possible as a general matter, the Supreme Court's statement about 'mere corporate presence' would seem meaningless."[9]

Clearly not so. The Court's statement "would be utterly incomprehensible" and "seem meaningless" only if one were to ignore the entire context in which it was written. *Kiobel II* was a case in which the Court *explicitly* declined to address the corporate-liability question, and focused instead on extraterritoriality.[10]

In other words, for the purposes of its decision, the Court *assumed* that corporations could be held liable under the ATS. In light of this assumption, how could the Court possibly have discussed extraterritoriality without referring to "corporate presence"? The defendants were, after all, corporations. And corporations are "present" in a country in a completely different sense than are individuals.[11] In short, Judge Pooler and the panel are only half right. The implication of the Court's statement is indeed "that corporate presence may, in

---

[6] *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 155 (2d Cir. 2015), *as amended* (Dec. 17, 2015).

[7] *Kiobel II*, 133 S. Ct. at 1669.

[8] Pooler, J., op. at 10 (emphasis in original).

[9] *In re Arab Bank*, 808 F.3d at 155.

[10] *See Kiobel II*, 133 S. Ct. at 1663 ("We . . . now affirm the judgment below, based on our answer to the second question.").

[11] *Cf. Shaffer v. Heitner*, 433 U.S. 186, 204 n.19 (1977) ("The differences between individuals and corporations may, of course, lead to the conclusion that a given set of circumstances establishes . . . [personal] jurisdiction over one type of defendant but not over the other.").

combination with some factual allegations, be sufficient"[12]—but sufficient only "to displace the presumption against extraterritorial application,"[13] not to establish liability.

Second, Judge Pooler argues that "the factual premise of the majority opinion in *Kiobel I* is incorrect," because "[v]iolations of the law of nations have been brought against juridical entities, including against ships, throughout history in both domestic and international tribunals."[14] The primary authority that Judge Pooler cites for this sweeping characterization of the historical record is *The Malek Adhel*, an 1844 decision of the Supreme Court that involved an *in rem* action against the eponymous ship brought pursuant to a federal statute codifying an offense against the law of nations—namely, piracy.[15]

But Judge Pooler's analogy between an *in rem* action against a ship and an *in personam* action against a corporation is inapt. As the Supreme Court has explained, a ship is named as a defendant in an *in rem* action only "under an ancient admiralty *fiction*," by which the ship is merely "*assumed* to be a person for the purpose of filing a lawsuit and enforcing a judgment," and "treated *as if* endowed with personality."[16] Thus, "[t]he concept of the ship as a distinct juridical entity" is no more than "a convenient conceptual tool."[17]

---

[12] *Arab Bank*, 808 F.3d at 155.

[13] *Kiobel II*, 133 S. Ct. at 1669.

[14] Pooler, J., op. at 8 (alterations omitted).

[15] 43 U.S. 210, 229 (1844) (describing the initiation of the action "upon an information *in rem*, upon a seizure brought for a supposed violation of the act of the 3d of March, 1819, . . . to punish the crime of piracy"). The Constitution empowers Congress to "define and punish . . . [o]ffenses against the [l]aw of [n]ations" such as piracy. *See* U.S. Const. art. I, § 8, cl. 10.

[16] *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 22–23 & n.1 (1960) (emphases supplied) (internal quotation marks omitted) (quoting Oliver Wendell Holmes, Jr., *The Common Law* 26–27 (1881)); *see also Chase Manhattan Fin. Servs., Inc. v. McMillian*, 896 F.2d 452, 456–57 (10th Cir. 1990) (describing the notion "that the ship itself is the 'person' who committed the offense and is legally responsible for the consequences" as a "fiction"); *Ins. Co. of N. Am. v. S/S Am. Argosy*, 732 F.2d 299, 302 (2d Cir. 1984) ("The *in rem* liability of a ship is a fiction . . . .").

[17] *Smith v. The Mormacdale*, 198 F.2d 849, 850 (3d Cir. 1952).

3

In this respect, ships are no different from other inanimate objects, against which *in rem* actions have been brought regularly since the Founding under federal statutes prohibiting piracy, slavery, and other law-of-nations offenses. Following Judge Pooler's analogy to its logical conclusion, these cases must stand for the proposition that sealskins,[18] 1998 Mercury Sables,[19] houses,[20] and bronze rods[21] are equally capable of violating international law.

By contrast to an *in rem* action against a ship, an *in personam* action against a corporation need not rely on any such fiction. This is because, unlike a ship, a corporation is truly "distinct from" its "corporate owner/employee," and is "a legally different entity with different rights and responsibilities due to its different legal status."[22] A corporation has, "necessarily and inseparably incident to" its very existence, "the ability to sue or be sued."[23] Accordingly, an action against a corporation is exactly that—an action against the corporation. *Pace* Judge Pooler, there is a difference between fact and fiction.

---

[18] *See Davison v. Seal-Skins*, 7 F. Cas. 192, 192–93 (C.C.D. Conn. 1835) (holding that "sealskins . . . saved and rescued from . . . piratical capture" could be salvaged through *in rem* action against them).

[19] *See United States v. One 1998 Mercury Sable*, 122 F. App'x 760, 761 (5th Cir. 2004) (unpublished opinion) (holding that 1998 Mercury Sable, as part of proceeds from peonage, was subject to forfeiture).

[20] *See United States v. Sabhnani*, 599 F.3d 215, 260–63 (2d Cir. 2010) (permitting forfeiture of house used to facilitate involuntary servitude).

[21] *See Martin v. One Bronze Rod*, 581 F. App'x 744, 750 (11th Cir. 2014) (unpublished opinion) (assuming without deciding that forfeiture of bronze rod connected to "piratical activity" was authorized).

[22] *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *see also Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) ("A corporation is an entity that is created by law and endowed with a separate and distinct existence from that of its owners. Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corporation and its owners, which is entitled to substantial weight." (citation omitted)).

[23] *Cook Cty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 126–27 (2003) (alterations and internal quotation marks omitted).

For these reasons—and for the reasons forcefully stated by Judge Jacobs in his separate concurrence, which I join in its entirety—I concur in the denial of rehearing en banc.

ROSEMARY S. POOLER, *Circuit Judge*, joined by Judges CHIN and CARNEY, dissenting from the denial of rehearing en banc:

By denying rehearing en banc in this case, respectfully, this circuit yet again misses an opportunity to correct the panel's majority opinion in *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010) ("*Kiobel I*"), an opinion which is almost certainly incorrect but continues to maintain a needless circuit split with *every* other circuit to address the question of whether corporations may be held civilly liable under the Alien Tort Statute ("ATS"), *see Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1022 (9th Cir. 2014); *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 530-31 (4th Cir. 2014); *Doe VIII v. Exxon Mobil Corp.*, 654 F.3d 11, 57 (D.C. Cir. 2011), *vacated on other grounds*, 527 F. App'x. 7 (D.C. Cir. 2013); *Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 747 (9th Cir. 2011), *vacated on other grounds*, 133 S. Ct. 1995 (2013); *Flomo v. Firestone Nat. Rubber Co.*, 643 F.3d 1013, 1021 (7th Cir. 2011); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1263 (11th Cir. 2009); *Romero v. Drummond Co.*, 552 F.3d 1303, 1315 (11th Cir. 2008). "[O]n the issue of corporate liability under the ATS, *Kiobel I* now appears to swim alone against the tide," *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 151 (2d Cir. 2015), and it is

the lone "outlier" among ATS cases, *Flomo*, 643 F.3d at 1017. [1] When our mistakes

are exceptionally important, we should not let an opportunity to correct them

pass, especially when a flawed opinion categorically bars litigation, thereby

blunting the natural development of the law.

"[W]e have not in the past denied *in banc* review because the opinion is

too wrong," *United States v. Bert*, 814 F.3d 591, 594 (2d Cir. 2016) (Jacobs, *J.*,

dissenting from the denial of rehearing en banc), and this case presents the same

issue as *Kiobel I.* Because the issue of corporate liability under the ATS remains a

"matter of extraordinary importance," *Kiobel v. Royal Dutch Petroleum Co.*, 642

F.3d 379, 380 (2d Cir. 2011) (Katzmann, *J.*, dissenting from the denial of rehearing

en banc); *see also id.* (Lynch, *J.*, dissenting from the denial of rehearing en banc)

("[T]his case presents a significant issue and generates a circuit split . . . ."), I

would rehear this case. I therefore respectfully dissent.

---

[1] My colleagues defending the decision to deny rehearing have not even
attempted to explain how the rest of the circuits are incorrect. Instead, they have
focused almost all their attention on their speculative belief that however wrong
*Kiobel I* may be, we need not correct the opinion because, as a practical matter,
claims against corporations have been entirely foreclosed by the Supreme
Court's decision upholding our panel's judgment on entirely different grounds.
*See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013) ("*Kiobel II*")
(holding that the ATS is subject to the presumption against extraterritorial
application of statutes). This questionable position not only reflects the weakness
of *Kiobel I*'s holding, it misunderstands *Kiobel II*, and unfairly blocks litigants
from accessing the courts and developing unsettled law. *See infra* Part II.

# I

## A

The ATS grants U.S. district courts jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. "[B]y its terms[,] [the ATS] does not distinguish among classes of defendants." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 438 (1989). And more than a century ago, even forty years before the wellspring of human rights litigation of the International Military Tribunals at Nuremberg, the U.S. Attorney General opined that the United States had long recognized that corporations are capable of violating the law of nations for purposes of the ATS. *See* Mexican Boundary-Diversion of the Rio Grande, 26 U.S. Op. Att'y Gen. 250 (1907) (concluding that aliens injured by a corporation's conduct in violation of a treaty between Mexico and the United States could maintain an action under the ATS). But in *Kiobel I*, though the issue had never been briefed or raised by either party, a panel majority of this court took it upon themselves to conclude that "[b]ecause corporate liability is not recognized as a 'specific, universal, and obligatory' norm, it is not a rule of customary international law that we may apply under the ATS." *Kiobel I*, 621 F.3d at 145 (citation omitted) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004)).

From the very outset, the panel majority erred by framing the question in the wrong way: whether there is a "norm of corporate liability under customary international law." *Id.* at 131. "International law does not work that way." William S. Dodge, *Corporate Liability Under Customary International Law,* 43 Geo. J. Int'l L. 1045, 1046 (2012). Customary international law does not contain general norms of liability or non-liability applicable to actors. *Id.* As the United States argued as amicus curiae in *Kiobel II*, the *Kiobel I* majority erred by "examin[ing] the question of corporate liability in the abstract;" rather, the court should have inquired "whether any of the particular international-law norms [at issue in the case] . . . exclude corporations from their scope." Brief for the United States as Amicus Curiae Supporting Petitioners at 21, *Kiobel II*, 133 S. Ct. 1659 (2013), 2011 WL 6425363, at *21 [hereinafter U.S. Amicus Br., *Kiobel II*]. Other circuits have correctly observed that the proper mode of inquiry is to apply a "norm-by-norm analysis of corporate liability," *Nestle USA*, 766 F.3d at 1021-22. For each ATS claim, courts should look to international law and determine whether corporations are subject to the norms underlying that claim. *See Sarei*, 671 F.3d at 748 ("*Sosa* expressly frames the relevant international-law inquiry to be the scope of liability of private actors for a violation of the 'given norm,' i.e. an

international-law inquiry specific to each cause of action asserted." (quoting *Sosa*, 542 U.S. at 733 n.20)). Simply put, there is no categorical rule of corporate immunity *or* liability. *See id.* at 747-48.

**B**

The *Kiobel I* majority's errors have long been traced to the majority's "misreading of footnote 20 in the *Sosa* opinion." U.S. Amicus Br., *Kiobel II*, at *16; *accord Kiobel I*, 621 F.3d at 163-65 (Leval, *J.*, concurring in the judgment). In footnote 20, the Supreme Court explained that the question related to "the determination whether a norm is sufficiently definite to support a cause of action" under the ATS "is whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual." *Sosa*, 542 U.S. at 732 & n.20. The thrust of the footnote is that *if* the defendant is a private actor, the court must then determine whether private actors are *capable* of violating the international norm at issue. U.S. Amicus Br., *Kiobel II*, at *17. This simply reflects the established rule in international law that some international norms apply only to state actors (*e.g.*, torture, which requires some involvement of a state actor or an individual acting in a public capacity), whereas others, such as genocide, do not

require the involvement of state actors. *Compare* Convention Against Torture and

Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 1, opened for

signature Dec. 10, 1984, 1465 U.N.T.S. 85, 113-14, *available at*

www.ohchr.org/EN/ProfessionalInterest/Pages/Cat.aspx (defining torture as

conduct performed "by or at the instigation of or with the consent or

acquiescence of a public official or other person acting in an official capacity"),

*with* Convention on the Prevention and Punishment of the Crime of Genocide,

art. II, opened for signature Dec. 9, 1948, 102 Stat. 3045, 78 U.N.T.S. 277, 280,

*available at* http://treaties.un.org/doc/Publication/UNTS/Volume%2078/Volume-

78-I-1021-English.pdf (defining "genocide" to include "any of the following *acts*"

committed with intent to destroy a group (emphasis added)). The *Kiobel I*

majority misread this footnote "as a basis for drawing a distinction between

natural and juridical persons—one that finds no basis in the relevant norms of

international law." U.S. Amicus Br., *Kiobel II*, at *18. As the United States noted,

the footnote "groups *all* private actors together, referring to 'a private actor such

as a corporation *or* individual.'" *Id.* (first emphasis added) (quoting *Sosa*, 542 U.S.

at 732 n.20). "Both natural persons and corporations can violate international-law

norms that require state action. And both natural persons and corporations can

violate international-law norms that do not require state action." *Id.* at *21. "The majority's partial quotation out of context, interpreting the Supreme Court as distinguishing between individuals and corporations, misunderstands the meaning of the passage." *Kiobel I,* 621 F.3d at 165 (Leval, *J.,* concurring in the judgment).

## C

The *Kiobel I* majority also justified its conclusion by noting that "no international tribunal has ever held a corporation liable for a violation of the law of nations" and that "no corporation has ever been subject to *any* form of liability under the customary international law of human rights." *Kiobel I*, 621 F.3d at 120, 121. But as Justice Kagan remarked, simply because there is no case in international law "about Norwegians," that does not mean that a particular norm "does not apply to Norwegians." Transcript of Oral Argument held on Feb. 28, 2012 at 27, *Kiobel II*, 133 S. Ct. 1659 (2013) (No. 10-1491).

Indeed, "[t]here is always a first time for litigation to enforce a norm; there has to be." *Flomo*, 643 F.3d at 1017; *accord Sarei*, 671 F.3d at 761 ("We cannot be bound to find liability only where international fora have imposed liability."); *Nestle USA*, 766 F.3d at 1021 ("[A] norm c[an] form the basis for an ATS claim

7

against a corporation even in the absence of a decision from an international tribunal enforcing that norm against a corporation."); *id.* (stating that "the absence of decisions finding corporations liable does not imply that corporate liability is a legal impossibility under international law . . . and . . . that the lack of decisions holding corporations liable could be explained by strategic considerations").

In any event, "[t]he factual premise of the majority opinion in [*Kiobel I*] is incorrect." *Flomo*, 643 F.3d at 1017. Violations of the law of nations have been brought against juridical entities, including against ships, throughout history in both domestic and international tribunals. *See, e.g.*, *The Malek Adhel*, 43 U.S. (2 How.) 210, 233 (1844) ("It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, or by the master or crew thereof, a wrong or offen[s]e has been done as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof."); *Flomo*, 643 F.3d at 1021 ("[I]f precedent for imposing liability for a violation of customary international law by an entity that does not breathe is wanted, we point to *in rem* judgments against pirate ships."); *see also id.*

8

at 1017 (discussing the application of international legal norms against corporations in the aftermath of World War II).

**D**

Finally, the majority's policy concern, that recognizing corporate liability under the ATS "would potentially create friction in our relations with foreign nations and, therefore, would contravene the international comity the [ATS] was enacted to promote," *Kiobel I*, 621 F.3d at 141; *see also Kiobel v. Royal Dutch Petroleum Co.*, 642 F.3d 268, 271 (2d Cir. 2011) (Jacobs, *J.*, concurring in the denial of panel rehearing), is sufficiently mitigated by the Supreme Court's decision that the ATS is subject to the presumption against extraterritoriality that can only be displaced where the relevant claim touches and concerns the United States with sufficient force, *see Kiobel II*, 133 S. Ct. at 1669; *see also id.* at 1664 (stating that by applying the presumption against extraterritoriality, the court was construing the ATS to "protect against unintended clashes" between U.S. and foreign law and avoid "international discord" and "the danger of unwarranted judicial interference in the conduct of foreign policy" (internal quotation marks omitted)).

## II

Even though *Kiobel I* is almost certainly incorrect, a majority of this court seems to believe that rehearing in this case would be a fruitless endeavor because, as a practical matter, the class of cases foreclosed by *Kiobel I* have been foreclosed by *Kiobel II*. Not only is this pure speculation, but just because *Kiobel II* erected a sluice where *Kiobel I* built a dam does not mean we should not dismantle *Kiobel I*'s barrier to viable cases under the ATS—even if they amount to just a trickle, the litigants in those cases should have access to the courts.

If anything, *Kiobel II* strongly suggests that corporate liability *does* exist under the ATS. The Court's concluding discussion in *Kiobel II*, particularly its statement that "it would reach too far to say that mere corporate presence suffices" to displace the presumption of extraterritoriality, would be utterly incomprehensible to include if the Court also believed corporations were *categorically* immune from suit under the ATS. *See* 133 S. Ct. at 1669.

In any event, the insistence by some members of this court that *Kiobel II* forecloses this case and others like it seeks to draw far too much guidance from an opinion as split and abstruse as *Kiobel II.*[2] The Court's "touch and concern"

---

[2] For example, Justice Kennedy's concurrence confirms that *Kiobel II* "leave[s] open a number of significant questions regarding the reach and interpretation of

test is cryptic and has understandably divided the circuits.[3] *See Tymoshenko v.*

*Firtash*, 2013 WL 4564646, at *4 (S.D.N.Y. Aug. 28, 2013) ("[T]he [Supreme] Court

failed to provide guidance regarding what is necessary to satisfy the 'touch and

concern' standard."). My colleagues voting against rehearing want clarity from

---

the Alien Tort Statute." 133 S. Ct. at 1669 (Kennedy, *J.*, concurring). And it clearly establishes that the ATS might still apply to "human rights abuses committed abroad." *Id.* Additionally, if Justice Kennedy made certain to note that the door was still ajar to lawsuits against corporations, or at least certain cases concerning conduct on foreign soil, so did Justice Alito's concurrence, which argued the majority did not go far *enough*. *See Kiobel II*, at 1669-70 (Alito, *J.*, concurring).

[3] In this circuit, we have held that "neither the U.S. citizenship of defendants, nor their presence in the United States, is of relevance for jurisdictional purposes," *Mastafa v. Chevron Corp.*, 770 F.3d 170, 188 (2d Cir. 2014), and that "if all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel*," *Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013). The Fourth, Ninth, and Eleventh Circuits have held to the contrary, holding that U.S. nationality of the defendant is relevant to the "touch and concern" inquiry even if it is not conclusive. *See Doe v. Drummond Co.*, 782 F.3d 576, 596 (11th Cir. 2015) ("Although the U.S. citizenship of Defendants is relevant to our inquiry, this factor is insufficient to permit jurisdiction on its own."); *Mujica v. AirScan Inc.*, 771 F.3d 580, 594 (9th Cir. 2014) ("[T]he fact that Defendants are both U.S. corporations . . . , without more, is not enough to establish that the ATS claims here 'touch and concern' the United States with sufficient force."); *Al-Shimari*, 758 F.3d at 527 ("[C]ourts must consider all the facts that give rise to ATS claims, including the parties' identities and their relationship to the causes of action."). Further, the Fourth Circuit has noted that "it is not sufficient merely to say that because the actual injuries were inflicted abroad, the *claims* do not touch and concern United States territory." *Id.* at 528; *see also Drummond*, 782 F.3d at 593 n.24 ("[I]t would reach too far to find that the only *relevant* factor is where the conduct occurred, particularly the underlying conduct.").

an opinion that does not offer it. What *is* clear is that *Kiobel II* did *not* shut the door to *all* cases against corporations or cases involving violations of international legal norms outside the United States. By categorically excluding corporations as a class of defendants, the *Kiobel I* majority is preventing the natural development of the law among the circuits as to the implications of the *Kiobel II* "touch and concern" test.

*    *    *

In short, *Kiobel I* was wrong. Every circuit to address the matter agrees that it is wrong. It is a disservice to the litigants in this case, and every other litigant with a potentially viable ATS case against corporate defendants, to rely on the Supreme Court to fix *our* error. *Kiobel I* places an unnecessary roadblock in front of litigation that can continue to help clarify a statute that, since *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980), has proven to be an essential tool for victims of egregious human rights abuses perpetrated by both corporations and natural persons.

DENNY CHIN, *Circuit Judge*, joined by Judge CARNEY, dissenting from the denial of rehearing en banc:

I respectfully dissent from the denial of rehearing *en banc*, for the reasons set forth in Judge Pooler's dissent, the panel decision in this case, *In re Arab Bank, PLC Alien Tort Statute Litigation*, 808 F.3d 144 (2d Cir. 2015), and Judge Leval's concurrence in *Kiobel I*, *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 149 (2d Cir. 2010). As a member of the panel, I write to respond briefly to certain observations in Judge Jacobs's concurrence in the denial of rehearing *en banc*.[1]

Judge Jacobs writes that the panel "steered deliberately into controversy" by deciding the appeal on the basis of *Kiobel I* when it could have affirmed "straightforwardly" on the basis of *Kiobel II*, *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), or on the basis that plaintiffs failed to sufficiently plead *mens rea*. Jacobs, *J.*, op. at 2, 4-5. Alternatively, Judge Jacobs contends that the appeal was subject to the "easy" disposition of a remand to the district court to consider the case under *Kiobel II*. *Id.* at 2, 5.

First, as to affirmance, the district court dismissed plaintiffs' claims under the Alien Tort Statute (the "ATS") solely on the basis of *Kiobel I*. The

---

[1]     Because he is a senior judge, the author of the panel opinion could not vote on whether to rehear this case *en banc*. Had the active judges voted in favor of such a rehearing, however, he would have been entitled to sit on the *en banc* court.

district court ruled after *Kiobel II* was decided, but rather than apply *Kiobel II*, it ruled on the basis of *Kiobel I*, holding that "[t]he law of this Circuit is that plaintiffs cannot bring claims against corporations under the ATS."  Pls.' Special App. at 1.  It did not consider whether plaintiffs' claims touched and concerned the United States.  Likewise, the district court did not consider the *mens rea* question,[2] nor did any of the parties brief the question on appeal.  It did not make sense for the panel to delve into these factual issues in the first instance on appeal, *see Eric M. Berman, P.C. v. City of New York*, 796 F.3d 171, 175 (2d Cir. 2015) ("[I]t is this Court's usual practice to allow the district court to address arguments in the first instance." (quoting *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 208 (2d Cir. 2003))), when the appeal could be disposed of as a matter of law.  If *Kiobel I* is indeed good law, there is no reason why we should not have applied it as a precedential decision to obviate the need for factual inquiries and additional briefing and litigation.

Second, as to remand, if *Kiobel I* were correctly decided, this case would be over and there would be no reason to remand.  If *Kiobel I* were correctly decided, there would be no reason to ask the district court and the parties to

---

[2]     The district court in a similar case against Arab Bank held that the plaintiffs there met the *mens rea* threshold.  *See Lev v. Arab Bank, PLC*, No. 08 CV 3251 (NG), 2010 WL 623636 (E.D.N.Y. Jan. 29, 2010) (Gershon, *J.*).

probe into the complex and fact-intensive issues of corporate presence and corporate intent, for there would be no subject matter jurisdiction under the ATS. If the bright-line rule is that corporations may not be sued under the ATS, there would be no reason to remand the case for further expensive and time-consuming litigation, including discovery and further motions. Moreover, if, on remand, the district court were to conclude that the claims met the requirements of *Kiobel II*, the corporate liability issue would still have to be decided, and all of the effort on remand would have been for naught.

Judge Jacobs also contends that there is no circuit split and that "[t]he panel opinion conjures up a circuit split." Jacobs, *J.*, op. at 6. The cases speak for themselves, and they are clearly at odds with our holding in *Kiobel I*:

- The D.C. Circuit has held that corporate defendants are subject to liability under the ATS, observing that "[t]here are a number of problems with the analysis in [*Kiobel I*]" and explicitly declining to follow it, *Doe VIII v. Exxon Mobil Corp.*, 654 F.3d 11, 50, 54-55 (D.C. Cir. 2011), although the decision was later vacated for further consideration, in part because of *Kiobel II*, 527 F. App'x 7 (D.C. Cir. 2013).

● The Seventh Circuit has held that "corporate liability is possible under the [ATS]." *Flomo v. Firestone Nat. Rubber Co.*, 643 F.3d 1013, 1021 (7th Cir. 2011).

● The Ninth Circuit has held that "there is no categorical rule of corporate immunity or liability" under the ATS, relying on Judge Leval's concurrence in *Kiobel I*. *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1022 (9th Cir. 2014).[3]

● The Eleventh Circuit has held that "[t]he text of the [ATS] provides no express exception for corporations, and the law of this Circuit is that this statute grants jurisdiction from complaints of torture against corporate defendants." *Romero v. Drummond Co.*, 552 F.3d 1303, 1315 (11th Cir. 2008) (citation omitted).

● The Fourth Circuit has permitted ATS claims to proceed against a corporate defendant. In *Al Shimari v. CACI Premier Technology, Inc.*, the Fourth Circuit reviewed the district court's dismissal of the plaintiffs' ATS claims for lack of jurisdiction. 758 F.3d 516, 524 (4th Cir. 2014). Applying *Kiobel II*, the

---

[3] While the Ninth Circuit did remand for the district court to consider *Kiobel II*, it noted that "the plaintiffs contend that part of the conduct underlying their claims occurred within the United States." 766 F.3d at 1028. The corporate liability issue was squarely part of its holding in the case. *Id.* at 1020-23.

4

Fourth Circuit held that "the district court erred in concluding that it lacked subject matter jurisdiction under the ATS" and vacated the dismissal of the ATS claims, remanding for further proceedings. *Id.* at 531. While the Fourth Circuit did not explicitly address the issue of corporate liability under the ATS, *see id.* at 525 n.5, the principal defendant was a corporation, *id.* at 520, 530, and clearly there would have been no reason to remand the case for further proceedings if jurisdiction over corporations did not exist under the ATS.[4]

While it is true, as Judge Jacobs notes, that some of these cases have been or could be resolved on *Kiobel II* grounds, there is no reason, again, why the courts and litigants in these cases should be litigating the complex, factual "touch and concern" issues if, indeed, corporations are not liable under the ATS as a matter of law.

Finally, the concurrence suggests that there is no reason for *en banc* review because "[t]he principle of *Kiobel I* has been largely overtaken, and its importance for outcomes has been sharply eroded." Jacobs, *J.*, op. at 2. This argument, it seems to me, assumes that no ATS case will present claims that

---

[4]    *See also Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 163 (5th Cir. 1999) (dismissing ATS claims against corporate defendants under Rule 12(b)(6), and to that extent appearing to implicitly assume that jurisdiction existed over ATS claims against corporate defendants).

touch and concern the United States. That is not so, as *Al Shimari* and *Doe I v. Nestle USA* show. There will be cases where plaintiffs can meet the requirements of *Kiobel II*. And in those cases, even assuming the claims are meritorious, in this Circuit the plaintiffs will be precluded from seeking relief under this Court's ruling in *Kiobel I* that corporations categorically are not subject to suit under the ATS. We are the only Circuit to reach that conclusion, and we should have taken this opportunity to reconsider the matter.

I would grant the petition for rehearing *en banc*.